IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

No. 13-10471-FF
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUDE SEREME,

Defendant-Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
_____

INITIAL BRIEF OF APPELLANT SEREME
_____

Donna Lee Elm
Federal Defender

Robert Godfrey
Research and Writing Attorney
Florida Bar Number 0162795
201 South Orange Ave., Suite 300
Orlando, Florida  32801
Telephone: 407-648-6338
Facsimile: 407-648-6095
Email: robert_godfrey@fd.org
Counsel for Appellant Sereme

**Appeal No. 13-10471-FF**

***United States of America v. Jude Sereme***

**CERTIFICATE OF INTERESTED PERSONS**

The persons listed below are interested in the outcome of this case:

Albritton, A. Brian

Bonita, Eric

Borras, Anthony Bartolomew

Cakmis, Rosemary T.

Calvo, Jose Luis

Casas, Jesus M

Chappell, The Honorable Sheri

Desir, Fritzco

Ductant, Neheme

Dupin, Michael

Elm, Donna Lee

Foxall, Roy W.

Francois, Rashid

Hollander, Lee

Hyppolite, Jophaney

**Appeal No. 13-10471**

*United States of America v. Jude Sereme*

**CERTIFICATE OF INTERESTED PERSONS -** *Cont'd*

Jean, Rick

Jean, Wilmane

Kaufman, Allen S.

Lakeman, Richard D.

Lazarus, David

Miller, Landon P.

O'Neill, Robert E.

Polster, The Honorable Sheri

Potter, Neil Barry

Rhodes, David

Rosenthal, Russell K.

Rothstein-Youakim, Susan H.

Sander, Jennifer Nicole

Sereme, Jude

Skuthan, James T.

Steele, The Honorable John E.

C2 of 3

**Appeal No. 13-10471**

***United States of America v. Jude Sereme***

**CERTIFICATE OF INTERESTED PERSONS - *Cont'd***

Viacava, Yolande G.

Waid, Nicole H.

Wright, Angela B.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Sereme requests oral argument to address the constitutionality of the unprecedented and extremely intrusive second roadside search of his person, conducted nearly a half-hour after the first frisk had disclosed no weapons or contraband. Oral argument is also requested to address whether there was compliance with the notice requirement of 21 U.S.C. § 851, where, months after his trial was over and just one day before the second day of his sentencing hearing, the government filed an "amended" notice based on an "amended" state court judgment that changed the description of the offense, the statutory citation of the offense, and the date of the prior offense.

## TABLE OF CONTENTS

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C1 of 3

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Course of Proceedings and Disposition in the Court Below . . . . . . . . . . . . . 2

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   The automobile stop and ensuing searches on December 20,

        2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   The fruits of the traffic stop . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.   The magistrate's recommendation and the district court's

        order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.   The government's reliance, at trial, on the evidence obtained

        or derived from the December 20, 2010, traffic stop . . . . . . . . . . . 16

    E.   The events leading up to sentencing and the sentencing

        hearings, including the government's amended § 851

notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Summary of the Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Arguments and Citations of Authority  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

I.    The district court erred in denying the motion to suppress as (a) there
      was no legal basis for a second search of Mr. Sereme, and (b) even if a
      second search were permitted, the scope of the second search, in
      which Mr. Sereme was required to lower his pants and allow the
      officer to feel his genital area and then look at his buttocks, greatly
      exceeded permissible bounds  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

II.   The enhanced sentence of mandatory life imprisonment on Count One
      should be vacated because (a) the government failed to comply with
      § 851's strict notice requirement where the original notice referenced
      an ambiguous Oklahoma conviction, (b) the amended Oklahoma
      conviction was not in existence at the time of Mr. Sereme's trial and
      was not "final" even when referenced by the government's amended
      § 851 notice, and (c) the government's amended § 851 notice did
      more than merely correct a clerical error  . . . . . . . . . . . . . . . . . . . . . . . . 47

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

iii

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

## TABLE OF CITATIONS

**Cases**                                                                                      **Page**

*Akins v. United States*, 204 F.3d 1086 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 54

*Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412 (1990) . . . . . . . . . . . . . . . . . . 41

*Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781 (2009) . . . . . . . . . . . . . . . . . 34

*Baymon v. State*, 933 So. 2d 1269 (Fla. Dist. Ct. App. 2006) . . . . . . . . . . . . . . . 42

*Bryan v. Spillman*, 217 F. App'x 882 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 40

*Dep't of Highway Safety & Motor Vehicles v. Leonard*,

      718 So. 2d 314 (Fla. Dist. Ct. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Ex parte Bridges*, 322 P.2d 427 (Okla. Crim. App. 1958) . . . . . . . . . . . . . . . . . 53

*Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319 (1983) . . . . . . . . . . . . . . . . . . . . 35

*Horsley v. State*, 734 So. 2d 525 (Fla. Dist. Ct. App. 1999) . . . . . . . . . . . . . . . . 43

*Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877 (S.D. Ind. 2009) . . . . . . . . 39

*Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882 (1997) . . . . . . . . . . . . . . . . . 33

*Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130 (1993) . . . . . . . . . . . 36, 45

\*    *M.W. v. State*, 51 So. 3d 1220 (Fla. Dist. Ct. App. 2011) . . . . . . . . . . . . . . . . . . 43

\*    *Perez v. United States*, 249 F.3d 1261 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . 49

\*    *Peterson v. State*, 578 So. 2d 749 (Fla. Dist. Ct. App. 1991) . . . . . . . . . . . . . . . 43

v

*Pierre v. City of Miramar*, -- F. App'x --,

    2013 WL 4750080 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Richardson v. Mason*, -- F. Supp. 2d --,

    2013 WL 3325520 (M.D. Ga. July 1, 2013) . . . . . . . . . . . . . . . . . . . . . . . . 45

\*   *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968) . . . . . . . . . . . . . . . 36, 46

*Steiner v. State*, 690 So. 2d 706 (Fla. Dist. Ct. App. 1997) . . . . . . . . . . . . . . . . . 43

\*   *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968) . . . . . . . . . . . . . . . . . . . . . . *passim*

\*   *United States v. Blake*, 888 F.2d 795 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 45

*United States v. Bowden*, 2009 WL 32755 (11th Cir. 2009) (unpublished) . . . . . 52

*United States v. De La Cruz Suarez*, 601 F.3d 1202 (11th Cir. 2010) . . . . . . . . . 31

\*   *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222 (1948) . . . . . . . . . . . 37, 38, 39

*United States v. Dunn*, 345 F.3d 1285 (11th Cir. 2003) . . . . . . . . . . . . . . . . . 34, 41

*United States v. Garcia*, 592 F.2d 259 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Griffin*, 696 F.3d 1354 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . 35

*United States v. Hardy*, 855 F.2d 753 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Heard*, 367 F.3d 1275 (11th Cir. 2004) . . . . . . . . . . . . . . . . . 34, 41

*United States v. House*, 684 F.3d 1173 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . 33

*United States v. Jackson*, 544 F.3d 1176 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . 49

*United States v. James*, 642 F.3d 1333 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . 49

*United States v. Ladson*, 643 F.3d 1335 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . 31

\*    *United States v. Lippner*, 676 F.2d 456 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . 54

\*    *United States v. Morales*, 854 F.2d 65 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . 54

*United States v. Rutherford*, 175 F.3d 899 (11th Cir. 1999) . . . . . . . . . . . . . 49, 50

*United States v. Smith*, 318 F. App'x 780 (11th Cir. 2009) . . . . . . . . . . . . . 41, 42

*United States v. Starks*, 301 F. Supp. 2d 76 (D. Mass. 2004) . . . . . . . . . . . . . . . . 38

\*    *United States v. Williams*, 59 F.3d 1180 (11th Cir. 1995) . . . . . . . . . . . 50, 52, 55

\*    *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297 (1999) . . . . . . . . . . . 37, 38

*Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338 (1979) . . . . . . . . . . . . . . . . . . . . 37

\*    *Youngblood v. Stephens*, 205 P.2d 279 (Okla. 1949) . . . . . . . . . . . . . . . . . . . . . . 53

**Statutes**

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

\*    21 U.S.C. § 841(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32, 47

\*    21 U.S.C. § 851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Fla. Stat. § 901.15(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

Okla. Stat. tit. 63, § 2-101(23) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Okla. Stat. tit. 63, § 2-101(26) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Okla. Stat. tit. 63, § 2-204(C)(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Okla. Stat. tit. 63, § 2-206(A)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Okla. Stat. tit. 63, § 2-402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Okla. Stat. tit. 63, § 2-402(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Okla. Stat. tit. 63, § 2-402(B)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Okla. Stat. tit. 63, § 2-402(B)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

## Other Authorities

2 Wayne R. Lafave *Search & Seizure:*

   *A Treatise On the Fourth Amendment* § 3.6(b) (5th ed. 2012) . . . . . . . . . . 42

## STATEMENT OF JURISDICTION

This is a direct appeal from a final judgment entered on May 14, 2013, in a criminal case. Doc. 542.  The United States District Court, Middle District of Florida, Fort Myers Division, had original jurisdiction pursuant to 18 U.S.C. § 3231. Notice of appeal was timely filed on May 15, 2013. Doc. 543. Jurisdiction now lies with this Court pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.A. Whether the police had reasonable suspicion or probable cause to conduct a second search of Mr. Sereme, a passenger in a car stopped for a traffic violation, after an initial frisk uncovered no weapons and no contraband.

I.B.  Whether the second search exceeded permissible boundaries where Mr. Sereme, standing on the side of a busy road, was ordered to loosen his pants so the officer could feel around his genital area, and then the officer went in back of Mr. Sereme and lowered his underwear to expose his buttocks.

II.  Whether the government complied with § 851's strict notice requirement where its original notice was based on an ambiguous state court judgment and its amended notice was based on a corrected state court judgment that did not exist until months after Mr. Sereme's trial ended.

## STATEMENT OF THE CASE

Mr. Sereme was charged with conspiracy after an investigation into a suspected drug trafficking organization, and with possession of cocaine found during a second search of his person following a traffic stop of a car in which he was a passenger.

This appeal challenges the second search of Mr. Sereme's person that took

1

place during the traffic stop. The first search, a *Terry*[1] frisk, did not yield any weapons or contraband, and there was no legal basis for the second search. Further, the second search, which involved feeling Mr. Sereme's genital area and exposing his buttocks, all while standing on the side of a busy road, greatly exceeded the scope of any permissible search. The appeal also challenges the validity of the § 851[2] notice, which mandated a life sentence upon conviction on the conspiracy count. The original § 851 notice was defective and the amended § 851 notice came too late as it was filed months after the trial had ended.

## Course of Proceedings

On September 28, 2011, an indictment was returned charging Jude Sereme and nine others with conspiracy to manufacture, possess with intent to distribute, and distribute 28 grams or more of crack cocaine. Doc. 3 (Count One). Mr. Sereme was also individually charged with possession of cocaine with intent to distribute. *Id.* (Count Three).

On February 9, 2012, Mr. Sereme filed a motion to suppress evidence arising out of a December 20, 2010, traffic stop in which he was a passenger. Doc. 120. The government responded. Doc. 144. An evidentiary hearing was held. Doc.

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).

[2] 21 U.S.C. § 851.

2

192. The motion was denied. Docs. 189, 212, 223.

On August 9, 2012, a superseding indictment was returned that contained the same charges against Mr. Sereme, except the conspiracy was now alleged to involve 280 grams of more of crack cocaine. Doc. 249 (the superseding indictment omitted three of the original conspiracy defendants – Rashid Francois, Michael Dupin, and Jennifer Nicole Sander – as they had entered guilty pleas subsequent to the initial indictment). On September 5, 2012, a second superseding indictment was returned. Doc. 282. The charges against Mr. Sereme were unchanged.

The case proceeded to trial, beginning September 18, 2012. Docs. 489-99. Mr. Sereme and five co-defendants were found guilty of conspiracy as charged in Count One. Doc. 383 (the sixth co-defendant named in the second superseding indictment, Fritzco Desir, was not in custody at the time the trial began. He was arrested during the trial and has subsequently entered into a plea agreement, with his sentencing scheduled for January 27, 2014; *see* Docs. 355, 599, 604, 605). Mr. Sereme was also found guilty of the possession charge in Count Three. Doc. 383.

On April 5, 2012, the government filed a notice pursuant to 21 U.S.C. § 851 stating that it would be seeking an enhanced penalty based on Mr. Sereme's prior convictions in 2009 in Oklahoma and in 2004 in Florida. Doc. 202. The same notice was also filed after the superseding and second superseding indictments

3

were returned. Docs. 254, 325. The description of the Oklahoma conviction was

the same in all three notices:

> **Possession of Controlled Drug with Intent to Distribute**, in
> violation of Oklahoma Statute 63 OS 2-401(A)(1), a crime punishable
> by imprisonment for a term exceeding one year, in the District Court
> in and for Tulsa County, Oklahoma, in Case No. CF-08-4832, on or
> about February 19, 2009.

The sentencing hearing began on April 1, 2013. Docs. 507, 559. The hearing

was scheduled to continue on April 11, 2013, but, at the government's request, was

rescheduled to April 26, 2013. Docs. 508, 513, 514.

On April 25, 2013, the government filed an "amended notice pursuant to 21

U.S.C. § 851." Doc. 530. Attached to the government's "amended notice" was an

"amended" judgment and sentence, filed April 24, 2013, in Mr. Sereme's prior

Oklahoma case. Doc. 530-2.

The sentencing hearing resumed on April 26, 2013, and concluded on May

13, 2013. Docs. 533, 541, 560, 561. The court sentenced Mr. Sereme to life

imprisonment on Count One and to a concurrent term of 300 months on Count

Three. Doc 542, Doc. 561 at 10.

Mr. Sereme remains incarcerated.

## Statement of the Facts

### A.    The automobile stop and two ensuing searches on December 20, 2010.

Officers from the Fort Myers Police Department stopped the car that Mr. Sereme was a passenger in on December 20, 2010. Prior to trial, Mr. Sereme filed a motion seeking to suppress the evidence directly and derivatively obtained as a result of that stop. Doc. 120. The motion argued, in relevant part, that there was no probable cause to search Mr. Sereme, and that the ensuing strip-search was constitutionally impermissible. The motion sought to suppress the powder cocaine discovered as a result of the search, and to suppress, as fruit of the poisonous tree, the subsequent phone calls Mr. Sereme made from the jail and the subsequent wiretaps that were obtained, in part, as a result of the discovery of the powder cocaine and those jail phone calls. *Id*. The government opposed the motion, arguing that there was probable cause to conduct a pat down search of Mr. Sereme for marijuana, that Mr. Sereme consented to the search, that there was no strip search, and that there was probable cause for the wiretaps apart from the traffic stop and ensuing jail calls. Doc. 144 at 19-25. An evidentiary hearing was held.

Testimony from the evidentiary hearing showed that, on December 8, 2010, FBI Agent Ryan Davis obtained a court order authorizing him to obtain cell site

location information for a phone he believed was being used by Mr. Sereme, who was suspected of violating drug laws. Doc. 192 at 7-12. With the court order, Agent Davis was able to receive information from the phone company about the phone's location every five to fifteen minutes. *Id*. at 9-10.

Around 6:30 p.m. on December 20, 2010, Agent Davis received information indicating that the phone was traveling along I-75 from Miami towards Fort Myers. From his investigation, he thought that the phone was probably in a Ford Edge and that Mr. Sereme might be in the car. *Id*. at 13-16. Agent Davis, along with other members of law enforcement, tried to locate the Ford Edge along I-75, but were unable to do so. *Id*. at 15-17. Believing the vehicle might be headed towards the Linda Loma neighborhood in Fort Myers, Agent Davis and the assisting local officers (two interdiction vehicles from Lee County) fanned out in an attempt to visually locate the Ford Edge. *Id*. at 17-18. Agent Davis sighted the Ford Edge, then directed the interdiction units to develop probable cause to conduct a traffic stop of the vehicle. *Id*. at 18-19, 24.

Around 8:30 that evening, Lieutenant Pete Hedrick, the head of the interdiction units for the Lee County Sheriff's Office, spotted the Ford Edge that Agent Davis had described. He pulled it over for speeding and a window tint violation. Doc. 192 at 62-66, 75, 141. Lieutenant Hedrick approached the car on

6

the passenger side and smelled an odor of marijuana when the window was rolled

down. *Id*. at 67-68. Mr. Sereme was in the front passenger seat and a child about

eight years old was in the back seat. *Id*. Lieutenant Hedrick had the driver (Johnny

Pierre, hereinafter "Pierre") step out of the vehicle and come with him back to the

patrol car. *Id*. at 68-69.

Detective Kirkby arrived a few minutes later and went to get the rental

agreement from the Ford Edge. Doc. 192 at 70, 84-85. He could smell the odor of

marijuana coming from inside the vehicle as he spoke with Mr. Sereme and the

child. *Id*. at 86-88. Detective Kirkby had a flashlight with a built-in camera that

recorded both video and audio. *Id*. at 86. The camera captured what happened over

the next 38 minutes at the scene of the traffic stop, from Detective Kirkby's initial

approach to get the rental agreement to Mr. Sereme's arrest. The video recording

was introduced into evidence as Government Exhibit 2 at the suppression hearing,

and a transcript of the audio portion of the recording was introduced as

Government Exhibit 3. Doc. 192 at 96-97, 101; Doc. 170.[3]

Detective Kirkby brought the rental agreement back to Lieutenant Hedrick.

Doc. 192 at 70. Lieutenant Hedrick learned that Pierre's driver's license was

---

[3]  The video recording has the date and time stamped in the upper right of
the screen. While the time is not accurate (it begins at 2:25:56), it can be used, and
is used in this brief, to reference specifically where events appear in the video.

suspended. *Id*. Detective Kirkby frisked Pierre, who admitted to smoking marijuana in the car. *Id*. at 71.[4] Pierre gave Lieutenant Hedrick permission to search the car. Doc. 192 at 71, 87-88. Lieutenant Hedrick then went to get Mr. Sereme from the rental car. Lieutenant Hedrick can be heard on the video (at 2:34:34) saying that he was going to make sure Mr. Sereme did not have any dope stuck in his pants. Lieutenant Hedrick brought Mr. Sereme back to the front of the patrol car.

Before searching the rental car, Lieutenant Hedrick patted down Mr. Sereme. Doc. 192 at 112-13. On the video, that frisk takes place between 2:35:17 and 2:35:31. At the suppression hearing, Lieutenant Hedrick explained that the purpose of the pat-down was twofold, to check for weapons and because, "based on the smell of the marijuana, we thought they may be concealing marijuana or narcotics on them." Doc. 192 at 73. No weapons or contraband were found on Mr. Sereme. Doc. 192 at 79-80, 89. Right after Mr. Sereme was patted down, Pierre told Lieutenant Hedrick, "I'm gonna be honest with you. I got a little cup that got a

---

[4] "I'll be honest with you. I did smoke a joint. I'm not gonna lie to you. I did[.]" Gov't Suppression Hearing Exhibit 2 at 2:33:22; Gov't Suppression Hearing Exhibit 3. Lieutenant Hedrick's testimony that Pierre advised that "they" had been smoking marijuana, as recounted in the magistrate's report and recommendation, is clearly erroneous. *See* Doc. 192 at 70-71, Doc. 189 at 10, 21, 25.

8

little ashtray. You might see two little buds. That's about it. I'll be honest." *Id*. at 72; *see* Gov't Suppression Hearing Exhibit 2 at 2:35:35; Gov't Suppression Hearing Exhibit 3.

Following the pat-down of Mr. Sereme, and as shown in the video recording, Lieutenant Hedrick searched the rental car for over 22 minutes while Detective Kirkby stood near the patrol car talking with Mr. Sereme, Pierre, and the child (from 2:36:00 to 2:58:20). Lieutenant Hedrick found "residual" marijuana ground into the carpet in the passenger compartment in the center hump area, but no other drugs. Doc. 192 at 71.

Another officer eventually arrived at the scene, after which Detective Kirkby walked up to the rental car to see how Lieutenant Hedrick was doing. Doc. 192 at 88. Lieutenant Hedrick asked Detective Kirkby if Pierre and Mr. Sereme had shown any sign of nervousness as he conducted his search, and Detective Kirkby replied (at 2:58:41 in the video) that they had only occasionally looked back toward the rental car. Doc. 192 at 73, 90. Detective Kirkby can be heard (at 2:58:50) asking Lieutenant Hedrick if he had any ideas. Doc. 192 at 122-23. Shortly thereafter (at 2:59:14), Lieutenant Hedrick suggests searching "the big guy again," then (at 2:59:37) Detective Kirkby says "alright, I'll check him again." Doc. 192 at 125.

9

Detective Kirkby walked back to where Mr. Sereme was standing and directed him (at 2:59:47) to come over to the side of his patrol car. Doc. 192 at 91. Mr. Sereme placed his hands on the patrol car next to where Detective Kirkby had set down his flashlight. Detective Kirkby, in back of Mr. Sereme, then began another pat down of Mr. Sereme. Doc. 192 at 92. He was apparently feeling Mr. Sereme's buttocks area because he told Mr. Sereme (at 3:00:00) that he was "not gettin' fruity with you, bro."

Detective Kirkby testified at the suppression hearing that he "detected that there was something in the rear," so he directed Mr. Sereme to unbutton the front of his jeans. Doc. 192 at 92-93.[5] Mr. Sereme complied, lowering his jeans by about six inches to expose his underwear (as seen on the video from 3:00:44 to 3:00:58). Doc. 192 at 93, 130-31.  Rather than searching Mr. Sereme's buttocks area, though, Detective Kirkby proceeded to look at and hand-examine Mr. Sereme's genital area.[6] According to Detective Kirkby's testimony at the hearing, he could see a white, powdery substance falling down between Mr. Sereme's legs. Doc. 192

---

[5] Curiously, the audio recording does not provide any indication that Detective Kirkby had found anything unusual while searching Mr. Sereme's buttocks.

[6] Detective Kirkby denied touching Mr. Sereme's genital area. Doc. 192 at 131. The video shows otherwise (from 3:01:10 to 3:01:21). At one point (3:01:17), Detective Kirkby felt the need to tell Mr. Sereme "I ain't gay now."

10

at 93-94, 131. The white powdery substance, though, is not visible on the video recording.

Detective Kirkby then moved back behind Mr. Sereme and probed the underwear covering Mr. Sereme's anal area with his fingers (on the video at 3:01:30). Detective Kirkby then pulled the waistband of Mr. Sereme's underwear out to expose Mr. Sereme's butt crack. Doc. 192 at 94, 134 (on the video at 3:01:35 to 3:01:37). Detective Kirkby saw a plastic baggie, and he let go of Mr. Sereme's underwear. He handcuffed Mr. Sereme, then put gloves on and retrieved three plastic baggies containing powder cocaine. Doc. 192 at 94-96. Mr. Sereme was arrested for possessing the cocaine. Doc. 192 at 145.

### B. The fruits of the traffic stop.

After Mr. Sereme was arrested, he made several phone calls from the local jail that were recorded. One of the numbers he called was 239-XXX-1052 ("1052"). Doc. 192 at 48. Agent Davis had no evidence that the 1052 number was known to law enforcement prior to Mr. Sereme's arrest. *Id.* at 48-49.

The investigation continued into 2011. Doc. 192 at 25. In July 2011, Agent Davis obtained authorization to intercept communications of cell phone number 1052, now believed to be used by Rick Jean. *Id.* at 25-26. In the affidavit to obtain the authorization, Agent Davis referenced the GPS monitoring of the phone

11

believed to be used by Mr. Sereme and the ensuing traffic stop to verify what he

had been told by confidential sources. *Id*. at 39-40; *see* Defense Suppression

Hearing Exhibit D, at 19-20.[7] Agent Davis also utilized the phone calls Mr. Sereme

made from the jail to obtain the intercept order for the 1052 phone. Defense

Suppression Hearing Exhibit D, at 20-21.

The intercepted communications from the 1052 phone in turn led Agent

Davis to obtain further authorization to intercept communications of the 1052

phone and initial authorization to intercept another cell phone (number 754-XXX-

3916) ("3916"). Doc. 192 at 26-27; *see* Defense Suppression Hearing Exhibit E

(also found at Doc. 120-2). Agent Davis agreed that, without the initial intercept

order for the 1052 phone, his affidavit did not set forth probable cause for the

intercept order for the 3916 phone. Doc. 192 at 51-52. He also agreed that he

would not have sought either intercept order based on just what the two

confidential informants (identified in his applications as CS-1 and CS-2) had said.

Instead, he wanted their information verified, and that verification occurred when

Mr. Sereme was stopped on December 20, 2010, as he was transporting cocaine

from Miami to Fort Myers. Doc. 192 at 52-54.

---

[7] Defense Suppression Hearing Exhibit D is the same document as found at
Doc. 120-1, which was an exhibit to Mr. Sereme's motion to suppress.

12

### C.    The magistrate's recommendation and the district court's order.

Based on the foregoing facts, the magistrate's report and recommendation found that both Lieutenant Hedrick and Detective Kirkby thought Mr. Sereme should be searched a second time because no contraband had been found by Lieutenant Hedrick when he searched the rental car. Doc. 189 at 11, 12. The magistrate erroneously recounted that Pierre stated "we" had smoked marijuana when, as the transcript and audio show, he said "I did smoke a joint." Doc. 189 at 21, *id.* at 10, 25; *see* n.4, *supra*. The magistrate noted that the initial search of Mr. Sereme did not locate any weapons. Doc. 189 at 21. The magistrate wrote that the initial pat-down was appropriately done for officer safety. Doc. 189 at 24 n.2. The magistrate's report omitted the undisputed fact that Lieutenant Hedrick said he was going to make sure that Mr. Sereme did not have any dope stuck in his pants. The magistrate also omitted that no drugs or contraband were found during the initial search of Mr. Sereme.

The magistrate rejected the government's argument that the second search of Mr. Sereme was a consent search. Doc. 189 at 26 n.3. The magistrate, though, concluded that the second search was justified as part of an "investigatory detention" because the officers "had reasonable suspicion to search Sereme in light

13

of the totality of the circumstances observed and sensed by Lt. Hedrick and Det.

Kirkby." Doc. 189 at 25. The magistrate continued:

> The facts are that the officers smelled a strong odor emanating from
> the vehicle and from Sereme's person and the driver had told the
> officers that there were probably a couple of buds of marijuana in the
> vehicle but the officers had not discovered any contraband during
> their search.[8] Defendant Sereme had been left in the vehicle for at
> least two minutes while Lt. Hedrick was the only officer at the scene
> and he was back at his patrol car speaking to Pierre. Therefore,
> Sereme was left alone in the vehicle for a certain amount of time alone
> with the buds of marijuana that Pierre told them was probably in the
> vehicle and it was no longer there upon the search. Pierre also
> informed the officers that both he and Sereme had smoked a blunt.
> Further, the rental vehicle occupied by Sereme had tint added to the
> windows, was traveling from a source city of narcotics, namely Miami
> headed towards the Linda Loma neighborhood, an area which law
> enforcement suspected of drug trafficking.

Doc. 189 at 25-26 (citations omitted). The magistrate opined that "the totality of

the circumstances" permitted the officers to search Mr. Sereme a second time "in

order to find the marijuana." Doc. 189 at 26. The magistrate added: "To the extent

that this was not considered an investigatory detention which requires reasonable

suspicion, the officers still would have had probable cause to search Sereme." Doc.

189 at 26 n.4.

The magistrate relied upon her conclusion that the second search was lawful

---

8  This finding is clearly erroneous. Lieutenant Hedrick's uncontradicted
testimony was that he found residual marijuana ground into the carpet. Doc. 192 at
71.

14

to find that the subsequent recorded jail calls Mr. Sereme made were not "the fruit of any poisonous tree." Doc. 189 at 30. Turning to the intercepts of the 1052 and 3916 phone numbers, the magistrate noted that the affidavits used to obtain the intercept orders "did reference the traffic stop of the Defendant on December 20, 2010, which resulted in the seizure of cocaine, and the subsequent jail calls between the Defendant and other individuals." Doc. 189 at 28, 29. The magistrate, though, found "independent probable cause" in the affidavits to support the wiretap interception orders. Doc. 189 at 31-32. The magistrate thus recommended that the motion to suppress be denied in its entirety. Doc. 189 at 33-34.

Mr. Sereme filed objections to the magistrate's report and recommendation. Doc. 212. He argued that an investigatory detention, permitted pursuant to *Terry v. Ohio*, 392 U.S.1, 88 S. Ct. 1868 (1968), "is limited to a search for weapons," but "no claim has been advanced that this was a protective search for weapons." Doc. 212 at 5-7. Mr. Sereme further maintained that, to the extent any search was legally justifiable, the intrusiveness of the second search, where "Detective Kirkby probed his genital area and buttocks through his underwear, and then caused him to lower his underwear," greatly exceeded what was permissible. Doc. 212 at 7-8. Mr. Sereme also disputed that there was probable cause to believe he was carrying contraband, and maintained that any probable cause to search for marijuana did

15

not, without more, extend to probable cause to search his person. Doc. 212 at 8-9, 11. Mr. Sereme also continued to seek exclusion, as fruit of the poisonous tree, of his subsequent jail calls and the intercepted phone calls. Doc. 212 at 15-23. He noted that, at the suppression hearing, the government had agreed that the cocaine and jail calls would have to be suppressed if the search was found to be unlawful. Doc. 212 at 18; *see* Doc. 192 at 175.

The government did not file any objections to the magistrate's report and recommendation, or response to Mr. Sereme's objections.

The district court rejected Mr. Sereme's objections and adopted the magistrate's report and recommendation. Doc. 223. The district court summarily found that "[t]he events leading up to the 'strip search' justified the detention and search, which were reasonable under the circumstances and did not violate defendant's Fourth Amendment rights." Doc. 223 at 2-3 (footnote omitted). Finding no Fourth Amendment violation, the district court did not address the exclusionary rule. Doc. 223 at 3.

**D.    The government's reliance, at trial, on the evidence obtained or derived from the December 20, 2010, traffic stop.**

At trial, over a continuing objection (Doc 490 at 186-87), the government introduced the evidence of the traffic stop and cocaine seized from Mr. Sereme on

16

December 20, 2010. Doc. 490 at 178-230. The government presented no other evidence of any drugs being seized from Mr. Sereme during the course of the alleged conspiracy and the investigation into it. Mr. Sereme was never seen selling drugs. None of the purchases made by cooperating witnesses were from Mr. Sereme.

Much of the government's case consisted of playing, over objection, the recorded phone calls from the jail after Mr. Sereme was arrested and from the later wiretap intercept orders that were obtained, in part, based on the traffic stop and jail calls. *See* Doc. 492 at 103-262 (Gov't Exhibits 8 and 8A, consisting of calls from jail placed by Mr. Sereme between December 21, 2010 and January 11, 2011); Gov't Exhibits 21, 21A, 22 (recordings, transcripts, and chart of calls intercepted over the 1052 phone number); Gov't Exhibits 24, 24A, 25 (recordings, transcripts, and chart of calls intercepted over the 3916 phone number); Doc. 493 at 102-263 (playing some of the intercepted calls); Doc. 494 at 20-175 (playing more of the intercepted calls). Altogether, about 125 phone calls were played for the jury as part of the government's case. Doc. 494 at 193-94.

Most of the rest of the government's case-in-chief consisted of cooperating witnesses who were paid for their efforts and/or were seeking to reduce their sentences. *See* Doc. 491 at 12-27 (testimony of Ladora Renee Risco, an admitted

17

crack cocaine addict and twice-convicted felon who was paid $100 for each controlled buy she made); Doc. 491 at 62-153 (testimony of Michael Hester, a diagnosed paranoid schizophrenic, admitted crack cocaine addict, and convicted felon who sold and distributed crack; he was paid $7,100 by law enforcement for his information and was given money to relocate; he also had a recent state court charge for possession of cocaine dropped even though he was guilty); Doc. 491 at 158-275 (testimony of Jennifer Nicole Sander, an admitted crack cocaine distributor and named co-conspirator who was incarcerated and awaiting sentencing after pleading guilty to two charges, Doc. 196, she was hoping for a sentence significantly lower than her 262-327 month career offender guideline range); Doc. 494 at 290-307 and Doc. 495 at 11-66 (testimony of Nancy Blakely, who admitted to purchasing crack cocaine about 100 times and became an informant after being stopped by the police; she was subsequently paid over $10,000 for information, making controlled buys, and relocation expenses); Doc. 495 at 67-113 (testimony of Lisa Barker, a crack cocaine user who became a paid informant in 2010 and was paid over $5,000 for her services); Doc. 495 at 124-213 and Doc. 496 at 8-93 (testimony of Beth Ann Torta, a daily user of crack cocaine and multiple convicted felon who agreed to work as an informant after being arrested and who was paid over $9,000 for her work as an informant and for

18

relocation expenses); Doc. 496 at 202-59 and Doc. 497 at 8-19 (testimony of

Michael Dupin, an admitted alcoholic and a named co-conspirator who was

incarcerated at the time after pleading guilty to two charges, Doc. 247, and was

hoping for a lower sentence at his upcoming sentencing).

In short, apart from the December 20, 2010, traffic stop and the evidence

derived from that stop, it is fair to say that the case against Mr. Sereme rested

largely on the word of convicted felons and drug users who were paid for their

actions or were hoping to catch a break in their own criminal cases.

>        **E.    The events leading up to sentencing and the
>               sentencing hearings, including the government's
>               amended 851 notice.**

The indictment was filed on September 28, 2011. Doc. 3. On April 5, 2012,

the government filed a notice, pursuant to 21 U.S.C. § 851, of intent to use Mr.

Sereme's prior convictions to enhance his sentence on both counts. Doc. 202. The

notice described the prior convictions as:

> (a) **Possession of Controlled Drug with Intent to Distribute**, in
> violation of Oklahoma Statute 63 OS 2-401(A)(1), a crime punishable
> by imprisonment for a term exceeding one year, in the District Court
> in and for Tulsa County, Oklahoma, in Case No. CF-08-4832, on or
> about February 19, 2009;

> (b) **Cocaine/Sell/Man/Deliver/Possess w/Intent**, in violation of
> Florida Statute, Section 893.13(1)(A)1, a crime punishable by
> imprisonment for a term exceeding one year, in the Circuit Court,

Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, in
Case No. F04-021452, on or about August 4, 2004.

Doc. 202 at 2.

On August 9, 2012, a superseding indictment was filed. Doc. 249. The next

day the government filed a second § 851 notice. Doc. 254. The description of Mr.

Sereme's prior convictions was exactly the same as in the original § 851 notice.

*Compare* Doc. 202 at 2 *with* Doc. 254 at 2.

On September 5, 2012, a second superseding indictment was filed. Doc. 282.

On September 14, 2012, the government filed another § 851 notice. Doc. 325. The

description of Mr. Sereme's prior convictions continued to be exactly the same as

in the prior § 851 notices. *Compare* Doc. 325 at 2 *with* Doc. 202 at 2 *and* Doc. 254

at 2.

The jury trial began on September 18, 2012, and ended with a verdict on

October 5, 2012. A Presentence Investigation Report ("PSI") was then prepared.

The PSI noted that the government had filed a § 851 notice on September

14, 2012. PSI ¶¶ 14, 124. According to the PSI's description of Mr. Sereme's prior

Oklahoma conviction, officers executing a search warrant at Mr. Sereme's

residence found a baggie of cocaine and multiple baggies of marijuana packaged

for sale. PSI ¶ 21. Based on the § 851 notice, the PSI asserted that Mr. Sereme

20

faced a mandatory life sentence on Count One, and an increased maximum of 30 years on Count Three. PSI ¶¶ 122, 123.[9]

Mr. Sereme objected to the statutory enhancement because the prior Oklahoma conviction was part of the instant charged conspiracy. PSR Addendum at 2; *see* Doc. 491 at 66-68 (AUSA stating, at sidebar during trial, government's theory that events in Oklahoma and current charges were "part of the same conspiracy . . . a continuing conspiracy"), Doc. 498 at 14 (AUSA arguing in closing, "this conspiracy begins in approximately 2009, per the testimony of Mr. Hester, and it begins in Oklahoma"). The PSI stated that "investigation supports the validity of these convictions," while deferring to the government to argue the legal issue. PSI Addendum at 2-3.

In a sentencing memorandum, Mr. Sereme maintained that his Oklahoma conviction should not count as a **prior** conviction for enhancement purposes because the Oklahoma conduct was part of the charged conspiracy. Doc. 481 at 3-9. He further maintained that a life sentence would violate the Eighth Amendment prohibition against cruel and unusual punishment. Doc. 481 at 13-14.

The sentencing hearing began on April 1, 2013. Doc. 559. After preliminary

---

[9] Absent the § 851 notice, Mr. Sereme would have had a career offender guideline range of 360 months to life. PSI ¶¶ 73-76, 94, 123.

matters, the court noted that "the 851 issue has a tremendous impact on the

guidelines," so it heard argument on that issue first. Doc. 559 at 6. Mr. Sereme

asserted that the Oklahoma conviction was part of the conspiracy charged in this

case. Doc. 559 at 6-8. He maintained that his conduct in Oklahoma "clearly was

part of the same conspiratorial conduct that the government introduced at trial and

alleged at trial, with respect to the general conspiracy count. Doc. 559 at 8. Mr.

Sereme's position was that, if the prior conduct was part of the same conspiracy,

then it should not be considered a prior conviction for § 851 purposes. Doc. 559 at

8-9. He recognized that case law called for a factual inquiry as to whether the prior

conviction should count for § 851 purposes. Doc. 559 at 9. The facts in this case

showed "the conduct continued without interruption," beginning in Oklahoma,

moving briefly to Miami, and then almost immediately beginning in Fort Myers.

Doc. 559 at 9-10; *see* Doc. 491 at 62-76 (testimony of Michael Hester, describing

his involvement with Mr. Sereme and others, first in Oklahoma and then in Fort

Myers). Therefore, Mr. Sereme maintained, there was "a continuing course of

conduct, uninterrupted," and so the Oklahoma conviction "should not be

considered to be a prior offense for purposes of 851." Doc. 559 at 11.

The court had questions about the specifics of the prior Oklahoma

conviction. Doc. 559 at 11-13. The government introduced a copy of the Oklahoma

22

judgment and sentence. Doc. 559 at 16-17; *see* Gov't Sentencing Exhibit 3. According to the first page of that document, Mr. Sereme had entered a plea of guilty to the crime of "possession of controlled drug with intent to distribute, 63 OS 2401." Gov't Sentencing Exhibit 3 (capitalization and bold omitted). The next page, however, in a section titled "Original Charges," showed the charge as being "Poss w/ Intent (Amend to Poss CD)." *Id*. Under another section titled "Enhancer Information," the drug type was given as "MJ." *Id*.

The parties and court agreed that "MJ" stood for marijuana. Doc. 559 at 13. The government, in fact, argued that the drug being marijuana was "the critical factual distinction between the defendant's felony conviction in Oklahoma and the instant case." Doc. 559 at 13. According to the government, because Mr. Sereme's Oklahoma case "clearly relate[d] to marijuana" and "had no relationship with cocaine," it was "not relevant conduct to the instant case" and so should be counted as a valid predicate for § 851 enhancement purposes. Doc. 559 at 14-15.

Referring to the Oklahoma sentencing document, Mr. Sereme asserted that the government's § 851 notice was defective. The judgment showed the charge against Mr. Sereme was amended to possession of a controlled drug (CD), but the § 851 notice indicated that the prior conviction was for possession of a controlled drug with intent to distribute. Doc. 559 at 17-18; *see* Doc. 325 at 2. The

23

government disputed Mr. Sereme's description of the charge as amended, asserting instead that the Oklahoma papers showed Mr. Sereme had been "charged with and convicted of possession of a controlled drug with intent to distribute, namely marijuana." Doc. 559 at 21.

The court ruled that the Oklahoma conviction was "essentially unrelated" to the instant case because the predominant drug in the Oklahoma case was marijuana, not cocaine. Doc. 559 at 24-25. The court thus overruled Mr. Sereme's original objection to counting the prior Oklahoma conviction for § 851 enhancement purposes. Doc. 559 at 25. The court took under advisement the other arguments that had developed about whether the prior conviction was for possession or possession with intent to distribute, and about whether the § 851 notice was defective. Doc. 559 at 25.

In a written order entered on April 22, 2013, the court stated that it was "not satisfied that the record at this point accurately establishes the convictions for which defendant was convicted in Oklahoma," so it took the objections to the conviction and the related paragraphs in the PSI under further advisement. Doc. 529 at 7.

Three days later, on April 25, 2013, the government filed an "amended notice pursuant to 21 U.S.C. § 851." Doc. 530 at 1. According to the amended

24

notice, following the April 1, 2013, sentencing hearing, the prosecutor had

contacted the District Attorney's Office in Oklahoma about Mr. Sereme's prior

conviction, and that office had identified "clerical errors" in the Oklahoma

judgment. Doc. 530 at 2. Those "clerical errors" included the description of the

offense, the statutory citation for the offense, and the description of the drug

involved. Doc. 530 at 2. The stated purpose of the amended § 851 notice was to

correct those "clerical errors," and to correct the date of conviction. Doc. 530 at 3.

The amended § 851 notice now described the prior Oklahoma conviction as

follows:

> **Possession of Controlled Drug Cocaine Base**, in violation of
> Oklahoma Statute 63 OS 2-402, a crime punishable by imprisonment
> for a term exceeding one year, in the District Court in and for Tulsa
> County, Oklahoma, in Case No. CF-08-4832, on or about February
> 13, 2009[.]

Doc. 530 at 3-4.

Accompanying the government's amended § 851 notice were copies of the

original Oklahoma sentencing papers and the newly amended Oklahoma

sentencing papers. *See* Doc. 530-1 (the original Oklahoma sentencing document,

which is also found at Gov't Sentencing Exhibit 3), and Doc. 530-2 (the

"amended" Oklahoma judgment and sentence, later introduced into evidence as

Government Sentencing Exhibit 6, *but see* n.10, *infra*). Where the original

25

sentencing document showed that Mr. Sereme had entered a plea of guilty to the

crime of "possession of controlled drug with intent to distribute, 63 OS 2401,"

Doc. 530-1 at 1, the amended document now showed a plea to "possession of

controlled drug cocaine base, in violation of 63 O.S. 2-402." Doc. 530-2 at 1

(capitalization, bold, and underlining omitted). The next page, however, continued

to show "Poss w/ Intent (Amend to Poss CD)," and to reference "63 OS 2-

401(A)(1)" as the statute that was violated. Docs. 530-1 at 3, 530-2 at 2. The

predominant drug had been changed in the amended judgment, with "MJ" crossed

out and "cocaine base" written in its stead. Doc. 530-2 at 2. The amended

Oklahoma judgment and sentence appears to have been signed by the Oklahoma

judge on April 24, 2013, but the clerk's certification that it was a true copy was

dated April 13, 2013. Doc. 530-2 at 3.

Mr. Sereme filed a written objection to the government's amended § 851

notice. Doc. 532. He argued that the amended notice was untimely as § 851

requires notice be filed before trial. Doc. 532 at 1-2. He further argued that the

amended notice violated due process. "There is no authority which permits the

government to seek the statutory enhancement traveling under a judgment which

was not even in existence at the time the § 851 notice was required to be filed."

Doc. 532 at 2. Mr. Sereme added that the factual basis upon which the plea was

26

based was Mr. Sereme's admission at sentencing that "I did have a controlled drug in my possession." Doc. 532 at 3; *see* Gov't Sentencing Exhibit 5 (an Oklahoma document titled "Plea of Guilty Summary of Facts"), at question 28. With no admission or stipulation that the controlled drug was cocaine base, it violated due process to enter the amended judgment. Doc. 532 at 3.

The sentencing hearing resumed on April 26, 2013. Doc. 560. The government introduced the "amended" Oklahoma judgment and sentence into evidence as Government Sentencing Exhibit 6. Doc. 560 at 5.[10] The government's position was that the amended Oklahoma document merely corrected clerical errors in the name of the offense and the statutory section of the offense. Doc. 560 at 4. The government's position now was that Mr. Sereme "was convicted of a felony drug offense in Oklahoma, possession of a controlled drug, or controlled dangerous drug, cocaine base." Doc. 560 at 8; *compare* Doc. 559 at 14 (prosecutor stating government's earlier position that the Oklahoma conviction "clearly relates to marijuana" and "had no relationship with cocaine").

The court was concerned with whether the amended Oklahoma judgment and sentence could be considered "final" since it had just been entered the day

---

[10] Government Sentencing Exhibit 6 was identical to Doc. 530-2, except that the date of the clerk's certification had been changed from April 13, 2013, to April 24, 2013. There was no explanation for this change.

27

before. Doc. 560 at 13-16. The court further noted that "[t]he 851 notice did not

contain a clerical error. The clerical error was in the Oklahoma judgment. The 851

correctly reflected what the paperwork from Oklahoma reflected at the time." Doc.

560 at 17-18. The prosecutor agreed, but argued that the amended § 851 notice was

nonetheless proper because the Oklahoma court's error could be imputed to him.

Doc. 560 at 18. "I accept the fact that their clerical error is my clerical error, and so

I corrected the same once they corrected the same." Doc. 560 at 18.

Mr. Sereme argued that the original Oklahoma judgment was ambiguous as

to what offense Mr. Sereme had been convicted of. Doc. 560 at 9-12, 22-23. He

introduced into evidence the original Oklahoma sentencing document, which

showed that Mr. Sereme and others had initially been charged with "unlawful

possession of controlled drug with intent to distribute" by having "under their

control Marijuana and/or Cocaine Base." Doc. 560 at 10; *see* Defense Sentencing

Exhibit A. Counsel for Mr. Sereme argued that "if the government did not know

what the offense of conviction was at the time that they filed their 851 notice,

clearly it's not something that we would have been on notice of." Doc. 560 at 23.

Counsel added that even if the amended Oklahoma judgment was simply a

clarification, it would still be ineffective for § 851 enhancement purposes since it

was not in existence at the time the § 851 notice was filed. Doc. 560 at 23. Mr.

28

Sereme was prejudiced because the government was seeking a life sentence based on a document that was not in existence until just two days before, long after the trial had ended. Doc. 560 at 25-26. The court took the matter under further advisement. Doc. 560 at 37-38.

On May 6, 2013, the court entered an order resolving the sentencing objections. Doc. 537. The court found that the government had established beyond a reasonable doubt that Mr. Sereme had been convicted in Oklahoma of possession of a controlled drug, cocaine base, in violation of Okla. Stat. tit. 63, § 2-402. Doc. 537 at 7-8. Turning to the government's amended § 851 notice, the court found that the correction of the date of conviction was "clearly covered under the clerical mistake portion of the statute." Doc. 537 at 9 (citing 21 U.S.C. § 851(a)(1)). The "more difficult question" was whether the change of the offense of conviction was merely a correction of a clerical error. Doc. 537 at 9.

The court found that the Oklahoma court had the power and authority to amend the judgment to reflect the correct offense of conviction and statutory citation. Doc. 537 at 9-10. The court believed such a clerical correction was "final" within the meaning of 21 U.S.C. § 841(b) because, in Oklahoma, "corrective orders in a criminal case may be reviewed in an appropriate original proceeding such as mandamus, certiorari, or habeas corpus. The review is not a challenge to

29

the underlying conviction, but of the corrective action taken on a nunc pro tunc basis." Doc. 537 at 10 (citation omitted). The court thus found that "the government's Amended Notice was properly filed as a correction of clerical errors." Doc. 537 at 11. The court alternatively found that the original § 851 notice (Doc. 325) "was inaccurate but was sufficient" to support the enhanced sentence. Doc. 537 at 11-12.

The court also rejected Mr. Sereme's contention that the Oklahoma conviction was not a **prior** conviction because it was part of the same conspiracy offense charged here in Count One. Doc. 537 at 13. The court concluded that Mr. Sereme's Oklahoma conviction qualified as a prior felony drug conviction under § 841(b) because his drug dealings in Florida occurred after his conviction in Oklahoma. Doc. 537 at 13-14.

The sentencing hearing resumed on May 13, 2013. The court imposed the statutorily required sentence of life imprisonment on Count One, and a sentence of 300 months on Count Two, to run concurrent. Doc. 561 at 10; *see* Doc. 542 (Judgment). Mr. Sereme renewed all objections previously stated. Doc. 561 at 13-14.

30

**Standards of Review**

1.  "A district court's denial of a motion to suppress evidence is reviewed as a mixed question of law and fact, with the rulings of law reviewed *de novo* and the findings of fact reviewed for clear error, in the light most favorable to the prevailing party." *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1213 (11th Cir. 2010).

2.  The adequacy of a 21 U.S.C. § 851 notice is reviewed *de novo*. *United States v. Ladson*, 643 F.3d 1335, 1341 (11th Cir. 2011).

## SUMMARY OF THE ARGUMENTS

**I.** There was no legal basis to search Mr. Sereme a second time. The first search had not revealed any weapons or contraband. There was no basis, prior to the second search, to believe he possessed any weapons. A *Terry* frisk incident to an investigatory detention was thus not permissible the second time around. Nor was there probable cause to search Mr. Sereme for contraband. Part of the stated reason for the first search was to make sure he did not have contraband hidden in his pants.

In addition, the scope of the second search greatly exceeded any permissible search. It took place on the side of a busy road. The officer felt Mr. Sereme's buttocks area, then ordered him to lower his pants, then felt around his genital area,

31

then felt again around his anus, then pulled his underwear down to expose Mr. Sereme's butt crack. This grossly intrusive search was constitutionally unreasonable in light of the ostensible reason for the search, which was to possibly discover "two little buds" of marijuana that the driver had said the police "might" find in the car.

**II.**  The original § 851 notice was fatally ambiguous. The notice referenced a prior Oklahoma conviction, but looking solely at the original Oklahoma Judgment and Sentence, it was impossible to tell whether it referred to a felony or a misdemeanor. The government eventually discovered, months after Mr. Sereme's trial had ended, that the Oklahoma sentencing papers contained errors. The government obtained an "amended" Judgment and Sentence from Oklahoma that changed the description of the offense, changed the statutory citation for the offense, and changed the description of the type of drug involved. The government then filed an "amended" § 851 notice, referencing the "amended" Oklahoma Judgment and Sentence that had not been in existence just two days before.

The "amended" Oklahoma Judgment and Sentence could not be used as a predicate for enhanced sentencing under 21 U.S.C. § 841(b) since it was not a "final" judgment at the time of Mr. Sereme's sentencing. The amended § 851 notice was, in any event, defective since it was filed much too late and it did more

32

than correct a "clerical error" in the original 851 notice.

## ARGUMENTS AND CITATIONS OF AUTHORITY

**I.     The district court erred in denying the motion to suppress as (a) there was no legal basis for a second search of Mr. Sereme, and (b) even if a second search were permitted, the scope of the second search, in which Mr. Sereme was required to lower his pants and allow the officer to feel his genital area and then look at his buttocks, greatly exceeded permissible bounds.**

The magistrate's report and recommendation, adopted by the district court, found that there was an "investigatory detention" of Mr. Sereme at the scene of the traffic stop, and that "the officers at a minimum had reasonable suspicion to search Sereme in light of the totality of the circumstances." Doc. 189 at 25. According to the magistrate judge, "it was reasonable based on the totality of the circumstances for the officers to believe that criminal activity was afoot and for the officers to search Sereme in order to find the marijuana." *Id*. at 26 (footnote omitted).

"[A] traffic stop is reasonable under the Fourth Amendment when supported by probable cause or reasonable suspicion." *United States v. House*, 684 F.3d 1173, 1199 (11th Cir. 2012). "[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S. Ct. 882, 886 (1997). The passenger may then be frisked, or patted down, if the police "harbor reasonable suspicion that the person

subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 784 (2009).

The Supreme Court's holding in *Johnson* was an extension of its seminal decision in *Terry*. *See Johnson*, 555 U.S. at 330, 129 S. Ct. at 786 ("We begin our consideration of the constitutionality of [the] patdown of Johnson by looking back to the Court's leading decision in *Terry v. Ohio*"). In *Terry*, the Supreme Court found that the Fourth Amendment does not always require probable cause when a police officer detains a citizen. Instead, "minimally intrusive searches and seizures of the person," now commonly known as investigatory detentions, "are permissible when a law enforcement officer has an objectively reasonable suspicion that 'criminal activity may be afoot,'" *United States v. Heard*, 367 F.3d 1275, 1278 (11th Cir. 2004) (quoting *United States v. Dunn*, 345 F.3d 1285, 1289 (11th Cir. 2003) (quoting *Terry*, 392 U.S. at 30, 88 S. Ct. at 1884). When an investigatory detention occurs, the officer may conduct "a reasonable search for weapons . . . where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883.

The "sole justification" for such a search "is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments

34

for the assault of the police officer." *Terry*, 392 U.S. at 29, 88 S. Ct. at 1884. The rule to be derived from *Terry*, then, is this: "Once an officer has stopped an individual, he may conduct a pat-down or frisk for weapons **if he reasonably believes that his safety, or the safety of others, is threatened**." *United States v. Griffin*, 696 F.3d 1354, 1359 (11th Cir. 2012) (emphasis added).

Absent a reasonable belief the individual stopped is armed, the permissible scope of an investigatory detention does not include any search of a person. "A *Terry* stop is justified to give the police an opportunity to engage in brief and nonintrusive investigation techniques, such as noncustodial questioning of the detained person.  A *Terry* stop cannot be used as the basis of a 'full search' that would normally be warranted only by the existence of probable cause, consent, or a valid arrest." *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988). *See Florida v. Royer*, 460 U.S. 491, 498, 103 S. Ct. 1319, 1324 (1983) ("reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop"); *id*. at 499, 103 S. Ct. at 1325 ("Detentions may be 'investigative' yet violative of the Fourth Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person.").

35

Significantly, the pat-down or frisk authorized by *Terry* as part of an investigatory detention is **not** for contraband. A *Terry* frisk "consist[s] solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault." *Sibron v. New York*, 392 U.S. 40, 65, 88 S. Ct. 1889, 1904 (1968). A more intrusive search "looking for narcotics" is "not reasonably limited in scope to . . . the protection of the officer" and so "violates the guarantee of the Fourth Amendment." *Id*. at 65-66, 88 S. Ct. at 1904. *See Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 2136 (1993) (limited search permitted by *Terry* "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence") (citation omitted).

Here, the police had a valid basis for stopping the car that Johnny Pierre was driving. Both Pierre and the passenger, Mr. Sereme, were validly ordered out of the car. There was no factual basis to believe that either person had a weapon, but both were nonetheless searched for officer safety. The search of Mr. Sereme, according to Lieutenant Hedrick, was also to make sure he did not have any drugs hidden in his pants. Gov't Suppression Hearing Exhibit 2 at 2:34:34; Gov't Suppression Hearing Exhibit 3. The frisks did not reveal any weapons or contraband on either person (which is why Mr. Sereme's motion to suppress did not challenge the initial frisk).

36

The police at that point had the odor of marijuana coming from the car, Pierre's admission that he had smoked marijuana in the car, his statement that there "might" be "two little buds" of marijuana in a cup, and his permission to search the vehicle. Based on those factors, the police had a valid basis for searching the vehicle and likely also had probable cause to detain Pierre. The vehicle was searched for over 20 minutes, but no contraband was found other than some residual marijuana ground into the carpet.

That the police had a legal basis for detaining Pierre and searching the car for contraband did not provide a legal basis for a second search of Mr. Sereme, the passenger of that car:

> Both before and after *Terry*, the Supreme Court has repeatedly emphasized that the police may not frisk persons simply because they happen to be in the same place as someone whom the police may lawfully search. *See Ybarra v. Illinois*, 444 U.S. 85, 92–93, 100 S. Ct. 338, 343 (1979) (police, who had warrant to search bar and bartender for unlawful drugs, could not frisk a customer who happened to be in the bar without "a reasonable belief that he was armed and presently dangerous"); *United States v. Di Re*, 332 U.S. 581, 583, 68 S. Ct. 222, 223 (1948) (police, who had arrested driver of car pursuant to informant's tip that he was selling counterfeit ration coupons, could not frisk passenger who happened to be in car). Even when police have probable cause to search the car for a contraband object, they are permitted to "inspect passengers' belongings found in the car that are capable of concealing the object of the search," *Wyoming v. Houghton*, 526 U.S. 295, 307, 119 S. Ct. 1297, 1304 (1999), but this authority "does not extend to the search of a person found in that automobile," *id*. at 308, 119 S. Ct. at 1304 (Breyer, J., concurring)

37

(distinguishing *Ybarra* and *Di Re* as involving search of persons, which constituted greater intrusion than search of things).

*United States v. Starks*, 301 F. Supp. 2d 76, 85-86 (D. Mass. 2004). As Justice Breyer explained in his concurrence in *Houghton*,

> I also agree with the Court that when a police officer has probable cause to search a car, say, for drugs, it is reasonable for that officer also to search containers within the car. . . . At the same time, I would point out certain limitations upon the scope of the bright-line rule that the Court describes. Obviously, the rule applies only to automobile searches. Equally obviously, the rule applies only to containers found within automobiles. And it does not extend to the search of a person found in that automobile.

*Houghton*, 526 U.S. at 307-08, 119 S. Ct. at 1304 (Breyer, J., concurring). The majority opinion in *Houghton* likewise recognized "the unique, significantly heightened protection afforded against searches of one's person."

In fact, in the earlier case of *Di Re*, the Supreme Court had rejected just such a rule proposed by the government. The government's argument there was "that officers have the rights, without a warrant, to search any car which they have reasonable cause to believe carries contraband, and incidentally may search any occupant of such car when the contraband sought is of a character that might be concealed on the person." *Di Re*, 332 U.S. at 584, 68 S. Ct. at 223. The reason advanced by the government for its proposed rule was that "common sense demands that such rights exist in a case such as this where the contraband sought is

38

a small article which could easily be concealed on the person." *Id*. at 586, 68 S. Ct.

at 224. The Court rejected the government's proposed rule:

> The Government says it would not contend that, armed with a search
> warrant for a residence only, it could search all persons found in it.
> But an occupant of a house could be used to conceal this contraband
> on his person quite as readily as can an occupant of a car. Necessity,
> an argument advanced in support of this search, would seem as strong
> a reason for searching guests of a house for which a search warrant
> had issued as for search of guests in a car for which none had been
> issued. By a parity of reasoning with that on which the Government
> disclaims the right to search occupants of a house, we suppose the
> Government would not contend that if it had a valid search warrant for
> the car only it could search the occupants as an incident to its
> execution. How then could we say that the right to search a car
> without a warrant confers greater latitude to search occupants than a
> search by warrant would permit?

*Id*. at 587, 68 S. Ct. at 225. The Court was "not convinced that a person, by mere

presence in a suspected car, loses immunities from search of his person to which he

would otherwise be entitled." *Id*.[11]

The violation of Mr. Sereme's rights by the second search conducted here

was more egregious than most cases because **he had already been searched for**

---

[11] *See Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 901 (S.D. Ind.
2009) ("The rule that the smell of marijuana emanating from a car combined with
the presence of rolling papers on a floorboard does not give officers probable cause
to believe that a search of each of the occupants will uncover contraband was
clearly established on January 19, 2007. *Di Re* established in 1948 that probable
cause to search a person cannot be established by association under closely
analogous circumstances.").

**contraband.** Doc. 192 at 73; Gov't Suppression Hearing Exhibit 2 at 2:34:34;

Gov't Suppression Hearing Exhibit 3.

The cases relied upon by the government below, *see* Doc. 144 at 18, to

justify the second search of Mr. Sereme are distinguishable. In *United States v.*

*Garcia*, 592 F.2d 259 (5th Cir. 1979), the lesser privacy protections inherent in a

border checkpoint stop were at issue. *Id*. at 259-60. Moreover, the agent's detection

of the odor of marijuana while questioning the driver was held to provide

reasonable suspicion for a search of the car's trunk, not for the search of the

passenger. *Id*.

In *Bryan v. Spillman*, 217 F. App'x 882 (11th Cir. 2007), there was

reasonable suspicion to detain Bryan due to the smell of marijuana emanating from

the house, but the legal justification for the pat-down search was "the officer's

safety." *Id*. at 885 ("Spillman had reason to be concerned for his safety because he

smelled marijuana smoke, Bryan behaved aggressively towards him, there was

poor lighting, and Bryan was wearing baggy clothes that could have concealed a

weapon."). Here, both Mr. Sereme and the driver had already been patted down

and no weapons had been found. There was no reason for Lieutenant Hedrick or

Detective Kirkby to be concerned about their safety when Mr. Sereme was

subjected to a second pat-down search.

40

The cases relied upon by the magistrate to justify the "investigatory detention" of Mr. Sereme, Doc. 189 at 25, are also distinguishable. In *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412 (1990), there was no search issue. The question was whether an anonymous tip provided reasonable suspicion for an investigatory stop. *Id*. at 326-27, 110 S. Ct. at 2414. The similar question presented in *United States v. Heard*, 367 F.3d 1275 (11th Cir. 2004), was "when does an anonymous tip give rise to a reasonable suspicion to justify a *Terry* stop." *Id*. at 1276. The actual search at issue in *Heard* was a *Terry* frisk for a weapon after a tipster told the officer that the defendant was carrying a weapon. *Id*. at 1277, 1280.

In *United States v. Dunn*, 345 F.3d 1285 (11th Cir. 2003), there was no search issue and the basis for the *Terry* stop – three guards hearing shots fired and then seeing the defendant with an assault rifle – was not contested by Dunn. *Id*. at 1286, 1289. The question in that case was when did a *Terry* stop become a *de facto* arrest. *Id*. at 1289. Similarly, in *United States v. Smith*, 318 F. App'x 780 (11th Cir. 2009), there was no search issue. The question in *Smith* was whether there was probable cause to justify the defendant's stop, detention, seizure, and arrest after a woman identified him as her assailant and he then ran from an officer and fought with the officer, clubbing him in the head with a gun, while trying to get away. *Id*. at 782, 791-92.

41

The magistrate alternatively found that "the officers . . . had probable cause to search Sereme." Doc. 189 at 26 n.4. The magistrate's alternative finding ignores the fact that Mr. Sereme had already been searched, and that one of the reasons for the search, as stated by Lieutenant Hedrick, was to ensure that Mr. Sereme did not have any dope stuck in his pants. *See* Doc. 192 at 73; Gov't Suppression Hearing Exhibit 2 at 2:34:34; Gov't Suppression Hearing Exhibit 3. During the approximately 24 minutes between the first search and the second search, Mr. Sereme had been standing on the roadside right next to a police officer. He thus could not possibly have hidden or secreted any contraband on his person during the time. *See also* 2 Wayne R. Lafave *Search & Seizure: A Treatise On the Fourth Amendment* § 3.6(b) (5th ed. 2012) (" the detection of the odor of marijuana in a certain *place* will not inevitably provide probable cause to arrest a *person* who is at that place").

Moreover, probable cause to search Mr. Sereme for marijuana would necessarily also mean probable cause to arrest him for possession of marijuana, but in Florida, "[a]n officer is authorized to make a warrantless arrest for a misdemeanor only when it is committed in the officer's presence." *Baymon v. State*, 933 So. 2d 1269, 1270 (Fla. Dist. Ct. App. 2006). *See* Fla. Stat. § 901.15(1) ("A law enforcement officer may arrest a person without a warrant when: The

42

person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer."). Florida courts "have strictly construed the 'presence of an officer' language, requiring that the arresting officer actually see or otherwise detect by his senses that the person has violated the [law]." *Horsley v. State*, 734 So. 2d 525, 526 (Fla. Dist. Ct. App. 1999). Thus, when applying § 901.15(1), "only the officers' own observations will be considered in determining probable cause to arrest." *Peterson v. State*, 578 So. 2d 749, 750 (Fla. Dist. Ct. App. 1991); *Pierre v. City of Miramar*, -- F. App'x --, 2013 WL 4750080, at *2 (11th Cir. 2013). While, under the fellow officer rule, "[t]he combined observations of two or more officers may be united to establish probable cause to arrest" for misdemeanors, *Dep't of Highway Safety & Motor Vehicles v. Leonard*, 718 So. 2d 314, 316 (Fla. Dist. Ct. App. 1998), the fellow officer rule applies only to observations made by other police officers. Florida courts "decline[] to impute the knowledge of citizen informants to an officer under the fellow officer rule." *M.W. v. State*, 51 So. 3d 1220, 1223 (Fla. Dist. Ct. App. 2011). *See, e.g.*, *id*. at 1222-23 (information relayed to officer by school administrator could not provide basis for arrest for misdemeanor assault); *Steiner v. State*, 690 So. 2d 706, 707-09 (Fla. Dist. Ct. App. 1997) (holding information relayed to officer by security guard could not provide basis for arrest for misdemeanor DUI and stating "If we were to

43

permit the security guard's observations which were relayed to the police as sufficient to constitute the *officer's* knowledge of an essential element of a crime, then as to misdemeanors there would be no point in the statutory requirement that the misdemeanor be committed in the officer's presence.").

Applying the Florida law to the instant case, Detective Kirkby lacked probable cause to believe that Mr. Sereme was committing the misdemeanor crime of simple possession of marijuana. The only evidence of unsmoked marijuana was the discovery of residual marijuana ground into the carpet and Pierre's statement that there "might" be "two little buds" of marijuana in a cup (recently smoked marijuana, as Pierre admitted to having done, would fully account for the odor of marijuana in the car and on the clothes of both Pierre and Mr. Sereme). Apart from the residual marijuana ground into the carpet, though, neither Detective Kirkby nor Lieutenant Hedrick had ever actually seen any marijuana in the car. Under § 901.15(1) and the case law discussed above, Pierre's statement could not provide a basis for the officers to find probable cause to believe that Mr. Sereme possessed the "two little buds" of marijuana that might have been in the car since Pierre was not a police officer.

Further, none of the cases cited by the government below or by the court below come close to justifying the grossly intrusive nature of the second search of

44

Mr. Sereme that was conducted here. *See United States v. Blake*, 888 F.2d 795, 800 n.11 (11th Cir. 1989) (noting "the increased level of intrusion when a frisk search of the genital region is involved"); *Richardson v. Mason*, -- F. Supp. 2d --, 2013 WL 3325520, at *5 (M.D. Ga. July 1, 2013) ("Mr. Richardson was subjected to an involuntary prostate and testicular exam performed by nonmedical personnel for all the public to see with no exigent circumstances requiring that the exam be conducted in the public parking lot. It is hard to imagine a more invasive violation of one's personal privacy. Under these circumstances, the Court finds that a reasonably prudent law enforcement officer would have known that the manner in which this particular search was conducted was clearly unreasonable and a violation of Mr. Richardson's rights under the Fourth Amendment."). "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson*, 508 U.S. at 373, 113 S. Ct. at 2136. The video shows that is clearly what happened here when Mr. Sereme was searched a second time. There was no basis at that point to believe he presented any danger to the officers; there was no legal basis to search him for suspected contraband; and in any event the scope of the search went far beyond the "limited patting of the outer clothing" sanctioned by *Sibron*, 392 U.S. at 65, 88 S. Ct. at 1904.

45

The motion to suppress thus should have been granted in its entirety. The cocaine seized from Mr. Sereme clearly had to be suppressed. The ensuing telephone calls made by Mr. Sereme from the jail should also have been suppressed as Mr. Sereme would not have been in jail but for the illegal search and seizure. *See* Doc. 192 at 175 (prosecutor agreeing that, if court granted motion, then the cocaine and the recordings should be suppressed). Finally, the telephone calls intercepted from the 1052 and 3916 telephones should also have been suppressed as Agent Davis testified that the jail calls were the only samples he had of Mr. Sereme's voice, Doc. 192 at 41-46, and he would not have the sought the intercept orders based just on the information from his confidential sources, without the confirmation of that information provided by the December 20, 2010, traffic stop, Doc. 192 at 52-54. As the cocaine seized from Mr. Sereme was the sole basis for the charge in Count Three, that conviction should be dismissed. Further, a new trial should be awarded on Count One because the government cannot possibly prove beyond a reasonable doubt that the erroneous denial of the motion to suppress played no part in the jury's conspiracy verdict. The cocaine seized during the traffic stop was the only tangible physical evidence introduced against Mr. Sereme. Much of the rest of the government's case relied upon the jail calls and the intercepted telephone calls. The untainted evidence consisted mostly

46

of informants who were paid and/or were hoping to catch a break on their criminal

cases.

**II.    The enhanced sentence of mandatory life imprisonment on Count One should be vacated because (a) the government failed to comply with § 851's strict notice requirement where the original notice referenced an ambiguous Oklahoma conviction, (b) the amended Oklahoma conviction was not in existence at the time of Mr. Sereme's trial and was not "final" even when referenced by the government's amended § 851 notice, and (c) the government's amended § 851 notice did more than merely correct a clerical error.**

Mr. Sereme's conspiracy conviction in Count One would normally carry a

sentence of 10 years to life. 21 U.S.C. § 841(b)(1)(A). If, however, Mr. Sereme

committed the instant criminal acts "after two or more prior convictions for a

felony drug offense have become final," then a life sentence was required by the

statute. *Id*. Before a mandatory life sentence could be imposed, the government

first had to give appropriate notice of the prior convictions that it was relying on:

> No person who stands convicted of an offense under this part shall be
> sentenced to increased punishment by reason of one or more prior
> convictions, unless before trial . . . the United States attorney files an
> information with the court . . . stating in writing the previous
> convictions to be relied upon. . . . Clerical mistakes in the information
> may be amended at any time prior to the pronouncement of sentence.

21 U.S.C. § 851(a)(1).

Here, the first three § 851 notices, all timely filed by the government before

47

trial began in September 2012, described Mr. Sereme's prior Oklahoma conviction

as follows:

> (a) **Possession of Controlled Drug with Intent to Distribute**, in
> violation of Oklahoma Statute 63 OS 2-401(A)(1), a crime punishable
> by imprisonment for a term exceeding one year, in the District Court
> in and for Tulsa County, Oklahoma, in Case No. CF-08-4832, on or
> about February 19, 2009[.]

Doc. 202 at 2, Doc. 254 at 2, Doc. 325 at 2. Based on the Oklahoma sentencing

documents in existence at the time, the government vigorously argued that Mr.

Sereme had been convicted of possession of marijuana with intent to distribute. *See*

Gov's Sentencing Exhibit 3; Doc. 559 at 13-15.

An inquiry to Oklahoma authorities in April 2013, however, made it clear

that the government's notices were fundamentally erroneous: The description of

the crime was wrong; the statutory citation was wrong; and the date of the

conviction was wrong. It was not until April 25, 2013 – more than six months after

the trial concluded – that the government filed an "amended notice" which now

described the prior Oklahoma conviction as follows:

> **Possession of Controlled Drug Cocaine Base**, in violation of
> Oklahoma Statute 63 OS 2-402, a crime punishable by imprisonment
> for a term exceeding one year, in the District Court in and for Tulsa
> County, Oklahoma, in Case No. CF-08-4832, on or about February
> 13, 2009

Doc. 530 at 3-4. The "amended notice" was based on an amended Oklahoma

48

judgment that had been entered on April 24, 2013, and that (a) changed the description of the offense, and (b) changed the statutory citation for the offense. *See* Gov't Sentencing Exhibit 6.

The notice requirement of § 851 is jurisdictional. *United States v. Jackson*, 544 F.3d 1176, 1184–85 (11th Cir. 2008). "This Circuit generally has required strict compliance with the filing and service specifications of § 851(a)(1)." *Perez v. United States*, 249 F.3d 1261, 1264 (11th Cir. 2001).

> In addition to strict compliance with § 851(a)(1)'s filing and service requirements, this Court has also emphasized the importance of the contents of the information. In *United States v. Rutherford*, 175 F.3d 899 (11th Cir. 1999), this Court made clear that the § 851(a)(1) information itself must provide the required notice of **the particular prior conviction** on which the government relies in seeking an enhanced sentence.

*Perez*, 249 F.3d at 1265 (emphasis added).

The doctrine of harmless error does not apply to failure to comply with the statutory scheme of § 851. *United States v. James*, 642 F.3d 1333, 1339 (11th Cir. 2011). Thus, the fact that the defendant presumably knows his past criminal history does not cure non-compliance with the notice requirement of the statute. "Most defendants know of their own convictions. If that knowledge alone was sufficient to trigger the enhancement procedure, no kind of notice intended by Congress would have been required." *Rutherford*, 175 F.3d at 904.

49

There are two purposes underlying the § 851 notice requirement. First, "is to allow the defendant to contest the accuracy of the information." *United States v. Williams*, 59 F.3d 1180, 1185 (11th Cir. 1995). The second purpose "is to allow defendant to have ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." *Id*.

Here, both purposes of an accurate § 851 notice are at issue. First, looking at the § 851 notices in conjunction with the Oklahoma conviction and sentencing documents provided in discovery, Mr. Sereme had no reason to contest the accuracy of the government's initial § 851 notices. The government was very strident at the time of the initial sentencing hearing that the reason the prior Oklahoma conviction could be counted was because it involved marijuana, not cocaine. *See*, Doc. 559 at 14. The original sentencing papers, referencing "MJ" as the drug type, supported that position. If, however, the government was correct in its position that Mr. Sereme had been convicted of a marijuana-based offense, **and** the original sentencing papers were also correct that the initial charge had been amended to simple possession, then there would be no reason for Mr. Sereme to challenge the accuracy of the government's § 851 notice. Under that notice, in conjunction with the then-existing Oklahoma sentencing papers, he did not qualify

50

for an enhanced sentence since a prior Oklahoma conviction for possession of marijuana was not a felony. *See* Okla. Stat. tit. 63, § 2-402(A), (B)(2).

There was unquestionably a mistake in the original Oklahoma sentencing papers. Mr. Sereme apparently received a felony sentence[12] of four years, all suspended, but a conviction for simple possession of marijuana, which was indicated in the original sentencing papers, is a misdemeanor. *See* Okla. Stat. tit. 63, § 2-402(A), and (B)(2). Thus, either the stated conviction was wrong (it should have been a felony, not a misdemeanor), or the stated sentence was wrong (it should have been a misdemeanor sentence, not a felony sentence). For § 851 notice purposes, where strict compliance by the government is required, the burden should not be on the defendant to clear up a mistake in the sentencing documents of an earlier conviction. Rather, the burden should be on the government to know the nature and statutory reference of the prior convictions that it is relying on when seeking to impose a mandatory life sentence on a defendant.

---

[12] Based on the original sentencing papers, a felony sentence apparently could have been imposed in two ways. First, cocaine is a Schedule II drug in Oklahoma, so possession of cocaine is a felony punishable by imprisonment for two to ten years. *See* Okla. Stat. tit. 63, § 2-206(A)(4); § 2-402(B)(1). Second, marijuana is a Schedule I non-narcotic drug in Oklahoma, so possession of marijuana with intent to distribute is also a felony punishable by imprisonment for two to ten years. *See* Okla. Stat. tit. 63, § 2-101(23) and (26); § 2-204(C)(12); and § 2-401(B)(2).

51

The government here failed in its basic duty to accurately notify Mr. Sereme of the prior convictions it was relying upon for the enhanced sentence. The error was not a mere clerical error; it was a substantive misstatement of the nature of the prior crime and the statutory reference for the prior crime. In addition, and going to the second purpose of the § 851 notice requirement, Mr. Sereme could not possibly "plan his trial strategy with full knowledge of the consequences of a potential guilty verdict," *Williams*, 59 F.3d at 1185, based upon such a basically erroneous notice, which left in question just what he had been previously convicted of. The original § 851 notice also contained an error in the date of the Oklahoma conviction. *See United States v. Bowden*, 2009 WL 32755, at *1 (11th Cir. 2009) (unpublished) ("the government failed to clearly indicate 'the previous convictions to be relied upon'" where the date listed for the prior conviction in the 851 notice was not the actual date of conviction). While this alone is reason to reverse the mandatory life sentence, there are further defects precluding the enhanced sentence.

The plain language of § 851(a) permits only corrections of "[c]lerical mistakes **in the information**" filed by the government. 21 U.S.C. § 851(a)(1) (emphasis added). The district court correctly noted that the § 851 notice here "did not contain a clerical error. The clerical error was in the Oklahoma judgment."

Doc. 560 at 17. There is no provision in section § 851 that allows for correction of the judgment of a prior conviction. The plain language of the statute allows for correction of the information filed by the government in the present case, but has no provision for correcting faulty underlying judgments in the previous state case. For this reason also, the mandatory life sentence should be reversed.

There is still another reason to reverse the life sentence. The district court correctly noted that clerical errors in an Oklahoma sentencing document may be corrected by way of a *nunc pro tunc* order. Doc. 537 at 9-10; *see, e.g.*, *Ex parte Bridges*, 322 P.2d 427, 430-31 (Okla. Crim. App. 1958). The district court erred, however, in its conclusion that such corrections may be challenged only by way of an original proceeding such as mandamus, certiorari, or habeas corpus. Doc. 537 at 10. A direct appeal is also an available vehicle for challenging orders purporting to correct clerical errors. *See, e.g.*, *Youngblood v. Stephens*, 205 P.2d 279, 280 (Okla. 1949) ("This is an appeal from an order entered nunc pro tunc correcting the journal entry of judgment previously rendered."). In fact, the "amended" judgment and sentence specifically advised Mr. Sereme of his "right to appeal to the Court of Criminal Appeals of the State of Oklahoma." Gov't Sentencing Exhibit 6; Doc. 530-2 at 3.

As a direct appeal was available to Mr. Sereme following the entry on April

53

24, 2013, of the amended Oklahoma judgment and sentence, that corrected conviction was not "final" for federal sentencing enhancement purposes. *See Akins v. United States*, 204 F.3d 1086, 1089 n. 1 (11th Cir. 2000) ("A conviction ordinarily becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted."); *United States v. Lippner*, 676 F.2d 456, 467 (11th Cir. 1982) ("for the purposes of enhanced sentencing under § 841(b)(1)(B), a conviction is not final until all avenues of direct attack have been exhausted"); *United States v. Morales*, 854 F.2d 65, 69 (5th Cir. 1988) ("the final-conviction language of § 841(b)(1)(B) applies to a conviction which is no longer subject to examination on direct appeal, including an application for certiorari to the United States Supreme Court, either because of disposition on appeal and conclusion of the appellate process, or because of the passage, without action, of the time for seeking appellate review").[13] The district court thus erred for this reason as well in counting the amended Oklahoma judgment and sentence for § 851 enhancement purposes.

The court's alternative finding, that the original § 851 notice was sufficient, was also error, for the reasons discussed above. The faulty notice neither provided

_____

[13]  The test for finality is thus "the opportunity for direct appeal." The test is not whether an appeal was, in fact, taken.

54

Mr. Sereme with a reason to contest the accuracy of the information, nor allowed him to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict. *Williams*, 59 F.3d at 1185. Instead, an apparently valid conviction that could support an enhanced sentence was not entered by the Oklahoma courts until April 24, 2013, and then was sprung upon Mr. Sereme by way of an "amended" § 851 notice on April 25, 2013, long after the trial had ended and even after the sentencing hearing had begun. A mandatory life sentence should not be affirmed upon such whimsical grounds.

## CONCLUSION

For the foregoing reasons, Mr. Sereme's convictions on Counts One and Three should be vacated and the case remanded for a new trial. Alternatively, his enhanced sentence of mandatory life imprisonment on Count One should be vacated and the case remanded for resentencing.

Respectfully submitted,

Donna Lee Elm
Federal Defender


*s/ Robert Godfrey*
Robert Godfrey
Research and Writing Attorney
Florida Bar Number 0162795
201 South Orange Ave., Suite 300
Orlando, Florida  32801
Telephone: 407-648-6338
Facsimile: 407-648-6095
E-Mail: robert_godfrey@fd.org
Counsel for Appellant Jude Sereme

56

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,302 words according to WordPerfect's word count, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

*s/ Robert Godfrey*
Robert Godfrey
Research and Writing Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Brief of Appellant Sereme and the notice of electronic filing was sent by CM/ECF on November 25, 2013, to Assistant United States Attorney Susan Rothstein-Youakim and to all other counsel of record.

*s/ Robert Godfrey*
Robert Godfrey

57