IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No.:  13-10471-FF
_____

UNITED STATES
Appellee

v.

JOPHANEY HYPPOLITE
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DISTRICT
_____

BRIEF OF APPELLANT
2:11-cr-00097-JES-SPC-8
_____

ANGELA B. WRIGHT, P.A.
Angela B. Wright
Florida Bar No.:0803065
607 W. Horatio St.
Tampa, Florida 33606
Telephone: (813) 277-0068
Facsimile: (813) 277-0587
wright@abwrightlaw.com
Counsel for Appellant

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTERESTED PERSONS**.................................................... iii

**TABLE OF CITATIONS** .........................................................................v

**STATEMENT REGARDING ORAL ARGUMENT** ........................................ vii

**PRELIMINARY STATEMENT** ........................................................... vii

**STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION**................................................................................1

**STATEMENT OF THE ISSUES**.................................................................1

**STATEMENT OF THE CASE**.................................................................2

    <u>PROCEDURAL HISTORY</u> .................................................................2

    <u>STATEMENT OF FACTS</u>.................................................................5

**STANDARD OF REVIEW** .................................................................6

**SUMMARY OF THE ARGUMENT** .................................................7

**ARGUMENT AND CITATIONS OF AUTHORITY** .........................................8

    I.   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT CONVICTION ON COUNT I – SINGLE CONSPIRACY ....................................................8

    II.   HYPPOLITE WAS DENIED DUE PROCESS BECAUSE THE GOVERNMENT FAILED TO ADEQUATELY SUPERVISE AND CORROBORATE, BIASED, DRUG ADDICTED, AND "PAID PER DRUG TRANSACTION INFORMANTS .................................................13

    III.   THE DISTRICT COURT'S FAILURE TO INSTRUCT ON MULTIPLE CONSPIRACIES AND FAILURE TO SUBMIT A SPECIAL VERDICT FOR INDIVIDUAL DRUG QUANTITY WAS REVERSIBLE ERROR..................17

    IV.   IMPOSITION OF THE DRUG PREMISES ENHANCEMENT WAS ERROR ................................................................................21

    V.   IMPOSITION OF THE MANAGER ROLE ENHANCEMENT WAS ERROR ................................................................................22

    VI.   THE 21 U.S.C. SECTION 851 NOTICE WAS DEFECTIVE, MISLEADING, AND UNCONSITUTIONAL .................................................23

**CONCLUSION**................................................................................32

**CERTIFICATE OF COMPLIANCE** .................................................33

**CERTIFICATE OF SERVICE** .................................................33

**CERTIFICATE OF ELECTRONIC FILING** .................................................33

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The persons listed below are interested parties in the outcome of this case:

1.    Jophaney Hyppolite, Appellant

2.    Jesus M. Casas, Assistant United States Attorney, Middle District

3.    The Honorable, John E. Steele, United States District Judge, Middle District

4.    David Lazarus, Assistant United States Attorney, Middle District

5.    The Honorable, Sheri Chappell, United States Magistrate Judge, Middle District

6.    Yolande G. Viacava, Assistant United States Attorney, Middle District

7.    Nicole H. Waid, Assistant United States Attorney, Middle District

8.    Jude Sereme, Co-Appellant

9.    Russell K. Rosenthal, Attorney for Jude Sereme

10.    Neheme Ductant, Co-Appellant

11.    Allen S. Kaufman, Attorney for Neheme Ductant

12.    Rick Jean, Co-Appellant

13.    Landon P. Miller, Attorney for Rick Jean

14.    Wilmane Jean, Co-Appellant

15.    Anthony Bartolomew Borras, Attorney for Wilmane Jean

16.    Rashid Francois, Co-Appellant

17.    Jose Luis Calvo, Attorney for Rashid Francois

18.     Fritzco Desir, Co-Appellant

19.     Lee Hollander, Attorney for Fritzco Desir

20.     Michael Dupin, Co-Appellant

21.     Roy W. Foxall, Attorney for Michael Dupin

22.     Jennifer Nicole Sander, Co-Appellant

23.     Neil Barry Potter, Attorney for Jennifer Sander

24.     Eric Bonita, Co-Appellant

25.     Richard D. Lakeman, Attorney for Eric Bonita

## TABLE OF CITATIONS

**CASES**

*Alleyne v. United States, 113 S. Ct. 2151* .............................................................7, 27

*Almendarez-Torres v. United States*, 523 U.S. 224, 228-47, 118 S. Ct. 1219, 1223-33 (1998).................................................................................................................29

*Apprendi v. New Jersey*, 530 U.S. 466, 490,120 S. Ct. 2348 (2000) .....................27

*Descamps v. U.S.*, 133 S. Ct. 2276, 2283 (2013).......................................................28

*Harris v. United States*, 149 F.3d 1304, 1306 (11th Cir.1998) ...........................6, 27

*Perez v. United States*, 249 F. 3d .............................................................................27

*Peugh v.  United States*, 133 S.Ct. 2072 (June 10, 2013)........................................28

U.S. ——, 131 S.Ct. 413, 178 L.Ed.2d 322 (2010).................................................7

*United States v. Alleyne*, 133 S.Ct. 2151 (2013)................................................ 17, 27

*United States v. Almedina*, 686 F. 3d 1312 (11ᵗʰ Cir.  2012)..................................19

*United States v. Bridgewater*, 407 Fed. Appx. 398, 401 (11ᵗʰ Cir. 2011) ................7

*United States v. Curbelo, infra, 22-2* .....................................................................15

*United States v. Dossie*, 851 F. Supp. 2d 478 (E.D.N.Y. 2012)..............................29

*United States v. Foley*, 508 F.3d 627, 638 (11th Cir.2007)......................................32

*United States v. Hansley*, 54 F.3d 601, 606,717 (11ᵗʰ Cir. 1995)...........................31

*United States v. Hollins*, 498 F.3d 622 (7ᵗʰ Cir. 2007) ...........................................19

*United States v. James*, No. 10-10399 .....................................................................29

*United States v. James*, No. 10-10399, P. 18 (11ᵗʰ Cir. 2011).................................26

*United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000)..............................6

*United States v. Kelsor*, 665 F.3d 684, 695-696 (6ᵗʰ Cir. 2011) ........... 17, 18, 19, 31

*United States v. Ladson*, 643 F.3d 1335, 1344 (11ᵗʰ Cir. 2011) ...................... 23, 24

*United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir.2009) .................................7

*United States v. Naranjo*, 634 F.3d 1198, 1206 (11th Cir.2011).............................6

*United States v. Ndiaye*, 434 F.3d 1270, 1280 (11th Cir.2006)...............................6

*United States v. Noland*, 495 F.2d 529, 533 (5ᵗʰ Cir. 1974) ...................................23

*United States v. Novaton*, 271 F.3d 968, 1016 (11ᵗʰ Cir. 2001) .............................24

*United States v. Olson*, 716 F.2d 850, 852 (11th Cir. 1983) ...................................25

*United States v. Ramirez*, 501 F.3d 1237, 1239 (11th Cir.2007).........................7, 23

*United States v. Reed*, 980 F.2d 1568, 1581-1582 (11ᵗʰ Cir. 1993).......................18

*United States v. Rutherford*, 175 F.3d 899,904 (11ᵗʰ Cir. 1999) ...........................26

*United States v. Savage*, 701 F. 2d 867 ( 11ᵗʰ Cir. 1983).......................................17

*United States v. Toler*, 144 F.3d 1423, 1426 (11ᵗʰ Cir. 1998) ................................11

*United States v. Weaver* 267 F 3d 231, 247 (3ʳᵈ Cir. 2001).............................. 25, 26

*United States v. Williams*, 59 F.3d 1180 ( 11ᵗʰ Cir. 1995)......................................17

*United States v. Young*, No. CR 12-4107-MWB, 2013 WL 4399232, at *8-12
    (N.D. Iowa Aug. 16, 2013)................................................................30
*United States v.Ysidro Diaz*, No. 11-cr-00821-2JG,  P.19  (E. D.N.Y. 2013) ........28

## STATUTES

§851 (a) (1)...................................................................... 23, 24
§851 (b)(1)(C)................................................................24
§851 (b)(e).....................................................................26
18 U.S.C. § 3231...............................................................1
18 U.S.C. § 3742...............................................................1
18 U.S.C. §3553(a) .................................................... 8, 28, 30
18 U.S.C. §3553(f).............................................................29
21 U.S.C. §841 (a)(1)...........................................................2
21 U.S.C. §841 (b) (1) (A) (iii).................................................2
21 U.S.C. §841(b) (1) (c) .......................................................3
21 U.S.C. §841(b)(B)...........................................................2
21 U.S.C. §846.................................................................2
21 U.S.C. §851 ...................................................... passim
21 U.S.C. §851(e) ...................................................... 24, 26
21 U.S.C. §853.................................................................3
28 U.S.C. §1291................................................................1

## OTHER AUTHORITIES

Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a).......................28
Justice Safety Valve Act of 2013, S. 691, 113th Cong. (2013)...................29
Memorandum from Eric H. Holder (2013 Holder Policy), *Department Policy on
    Charging Mandatory Minimum Sentences and Recidivist Enhancements in
    Certain Drug Cases* (Aug. 12, 2013) ......................................29
Smarter Sentencing Act, S. 1040, 113th Cong. (2013) ..........................29
U.S.S.G §3B1.1 (b)............................................................22
U.S.S.G §3D1.1 (b) (12) .......................................................21
U.S.S.G. §2D1.1(b)(2) ........................................................14
U.S.S.G. §4A1.1(c).............................................................4
U.S.S.G.L. §4A1.2 (a).........................................................25

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellant, Jophaney Hyppolite, respectfully waives oral argument.

## PRELIMINARY STATEMENT
### A. Identification of Parties

Appellant is generally referred to as "Appellant" or "Hyppolite." Trial counsel for the Appellant is referred to as "counsel for Hyppolite" or "Attorney Mills" or "Mills." The United States of America is referred to as "the Government," or "Mr. Casas or Mr. Lazarus."

Co-defendants will be referred to as defendant followed by their last name i.e. defendant Jude Sereme as "Sereme" or by "defendant Sereme." Counsel for co-defendants will be referred to respectively as "Attorney Miller," or "Miller," or "counsel for Hyppolite."

### B. Citations to the Record

Citations to the record are in the form designated by the United States District Court, Middle District of Florida, Fort Myers Division, Criminal Docket Case No. 2:11-cr-97-FtM-29SPC in the certified copy of the Record on appeal. Citations in this brief are made in the form "Doc__:__-__" i.e. "Doc1:11-2" where "Doc 1" refers to the document number and "11" refers to the page of the document.

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

This is a direct, plenary appeal as a matter of right from a judgment of conviction and sentence in a criminal case entered by the United States District Court, Middle District of Florida, Ft. Myers Division, January 23, 2013. Doc 449 Original Jurisdiction was vested in the district court pursuant to 18 U.S.C. § 3231. Notice of appeal was timely filed pursuant to Fed. R. App. P. 4 (b) on January 27, 2013. Doc 452    Appellate jurisdiction is conferred upon this Honorable Court pursuant 28 U.S.C. § 1291 which provides in relevant part that "[t]he courts of appeals... shall have jurisdiction of appeals from all final decisions of the District Courts of the United States..."and by 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

I.   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT CONVICTION ON COUNT I – SINGLE CONSPIRACY

II.  HYPPOLITE WAS DENIED DUE PROCESS BECAUSE THE GOVERNMENT FAILED TO ADEQUATELY SUPERVISE AND CORROBORATE, BIASED, DRUG ADDICTED, AND "PAID PER DRUG TRANSACTION INFORMANTS

III. THE DISTRICT COURT'S FAILURE TO INSTRUCT ON MULTIPLE CONSPIRACIES AND FAILURE TO SUBMIT A SPECIAL VERDICT FOR INDIVIDUAL DRUG QUANTITY WAS REVERSIBLE ERROR

IV.  IMPOSITION OF THE DRUG PREMISES ENHANCEMENT WAS ERROR

1

V.    IMPOSITION OF THE MANAGER ROLE ENHANCEMENT WAS
       ERROR

VI.   THE 21 U.S.C. SECTION 851 NOTICE WAS DEFECTIVE,
       MISLEADING, AND UNCONSITUTIONAL

## STATEMENT OF THE CASE

PROCEDURAL HISTORY

September 28, 2011, the Government filed a 12 count indictment in the
Middle District of Florida, Fort Myers Division against Jophaney Hyppolite a/k/a
"Mike Larry", a/k/a "Bo", and nine (9) co-defendants:   Count one charged
conspiracy **"beginning on an unknown date, but at least by in or about July
2010, and continuing through and including the date of this Indictment** in Lee
and Collier County, in the Middle District of Florida and elsewhere did knowingly
and willfully conspire to manufacture, possess with intent to distribute, and
distribute 280 grams or more of a mixture or substance containing a detectable
amount of cocaine base, also known as crack cocaine, in violation of 21 U.S.C.
§841 (a)(1), and 841(b)(B) and 846.  Doc 3   He was also charged in substantive
counts six and eleven with aiding and abetting the distribution of cocaine base or
crack cocaine on June 29, 2011 and September 27, 2011. Doc 449 The maximum
term of imprisonment on count 1 is Life.   The maximum term of imprisonment on
count 6 or 11 is thirty (30) years.   21 U.S.C. §841 (b) (1) (A) (iii) and 851; 21

2

U.S.C. §841(b) (1) (c) and 851. The indictment contained a forfeiture provision. 21 U.S.C. §853.    He was detained October 18, 2011 and John Mills ("attorney Mills") was appointed1 on December 22, 2011.   Doc 3; Doc 35; Doc 104.

April 5, 2012, the Government electronically filed (ECF) a 21 U.S.C. §851 Notice of Government Intention to Use Prior Convictions to Enhance the Penalty as to Count One, Count Six, and Count Twelve of the Indictment as to Defendant Jophaney Hyppolite (851 Notice or §Notice or Notice). Doc 201 In total the Government filed three (3) Indictments2 followed by three ECF 851 Notices3. September 18, 2012, Hyppolite, and codefendants Jude Sereme (Sereme), Rick Jean (R. Jean); Wilmane Jean (W.Jean); Neheme Ductant (Ductant), and Eric Bonita (Bonita) proceeded to jury trial. Doc 348    October 3, 2012, Rule 29

---

1 December 27, 2011, Hyppolite filed a motion to suppress post-Miranda statements. Doc 106   The Government did not oppose the motion. Doc 109; Doc 112   February 13, 2012, Hyppolite filed motions to adopt Ductant and Sereme's motions to suppress wiretap evidence in relation to a traffic stop.  PSR ¶'s 33-34; Docs 126 and Doc 127   March 27, 2012, Magistrate Polster Chappell denied all motions to suppress wiretap evidence. Doc 189.  She ordered that Hyppolite did not have standing to challenge the wiretap and evidence and denied his motion to suppress.  Doc 187   Doc 189; Doc 501:26-28: PSR ¶'s 33-34

2 August 9, 2012, superseding **indictment** (Doc 249); September 5, 2012, **second superseding indictment** with two material changes:  1) expanded the dates of the conspiracy to state "**Beginning on an unknown date, but at least by in or about 2009, and continuing through in or about October 2011**" and 2) increased the drug quantity alleged to 280 grams or more of cocaine base.  Doc 282

3 August 10, 2012, the Government ECF a second 851 Notice. Docs 251-254 September 14, 2012, the Government electronically filed a third 851 Notice. Docs 322-325

3

Motion, the court dismissed count six of the Indictment against Hyppolite.  Doc 497: 69-73   October 5, 2012, found Hyppolite guilty on counts 1 and count 11.

January 22, 2013, Hyppolite was sentenced with an advisory guideline range 360-life, base offense level 37, and criminal history category VI.   He had a total of 13 criminal history points, including the maximum four points, USSG 4A1.1(c). PSR ¶ 92 (PSR ¶'s82, 83, 85, 89); Doc 50:5, 30; Doc 501:4-5

Drug Quantity: Unopposed by the Government, drug quantity was reduced consistent with the jury verdict to 280 grams and less than 840 grams.  PSR ¶61 Doc 501:19-20 Manager Role Enhancement: Over his objection the court imposed a three level manager role enhancement. PSR ¶64, 66; Doc 501:25-26, 28-29   Trap House Enhancement:   Over his objection the court imposed a two-level enhancement for maintaining a drug house. PSR ¶64, 66; Doc 501: 25-26; 28-29 21 U.S.C. §851 Life Enhancement:    Over his objection based on a defective Notice, the district court imposed mandatory life on count I, and 30 years concurrent on count II followed by a concurrent ten years supervised release on count I; concurrent with six years supervised release count II, standard conditions. 21 U.S.C. §851; Doc 324; Doc 449 Forfeiture did not apply.  Doc 501:31, 17-18

January 17, 2013, Hyppolite filed a Notice of Appeal.  Doc 452   He is serving a mandatory life sentence at Coleman Federal C.I., Coleman, FL.

4

## STATEMENT OF FACTS

### Offense Conduct

July 2010, the Lee County Sheriff's Office (LCSO), Fort Myers, Florida, investigated Haitian drug distribution houses in N. Fort Myers (Suncoast) and S. Fort Myers (Linda Loma). PSR ¶ 18 The investigators determined that the drug trafficking organization (DTO) involved the purchase of powder cocaine in Miami, Florida to manufacture and sell in at street level in Fort Myers. PSR ¶'s 18-19 The Federal Bureau of Investigation (FBI) joined the investigation on suspicion it began in the State of Oklahoma about 2008.  PSR ¶

The Fort Myers operating distribution locations and guideline roles were alleged as follows:   **1) Sereme** – various locations (Suncoast Estates, Paloma Park, Linda Loma), organizer, leader, distributor (PSR ¶ 20);   **2) Ductant** – mid-level manager – Kimble drug house (Kimble) - transporter and distributor (PSR ¶ 21); **3) Hyppolite** – Kimble – manager Kimble, distributor, recruitment (PSR ¶ 22);   4) **Rashid Francois (Rashid)** – Carmen Ave. house (Carmen) – distributor, recruiter, manager;   **5) W. Jean** – Kimble and Carmen-distributor (PSR ¶ 25); **6) Michael Hester (Hester)**, *unindicted coconspirator* – distributor (PSR ¶ 26);   **7) Bonita** – Linda Loma – distributor, recruiter (PSR ¶'s 27);    **8) Jennifer Sander (Sander)** – Linda Loma – logistics, distributor, routing money (PSR ¶ 's 28, 28).  Relying heavily on co-conspirators as paid informants alleged controlled drug purchases

were conducted at suspect distribution houses.  PSR ¶'s 31, 36, 41-44, 46-53; audio and video surveillance by agents (PSR ¶'s 44-47); authorized wiretaps (PSR ¶ 45); and recorded jail conversations (PSR ¶ 35; 48).  December 20, 2010, based on authorized wiretaps, a traffic stop was conducted on Sereme and Ductant, traveling to Fort Myers from Miami when three baggies containing 86 grams of powder cocaine were discovered on Sereme. PSR ¶'s 33-34 Sereme made recorded jail calls with several co-defendants, including Hyppolite.  PSR ¶ 35   October 18, 2011, search warrants were executed on the distribution houses which discovered modest amounts of crack cocaine, drug paraphernalia, ledgers, money, rent receipts, cell phones, and cooking utensils.  PSR ¶ 54

## STANDARD OF REVIEW

Admission of evidence is reviewed for abuse of discretion.  *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).   Sufficiency of the evidence is reviewed de novo, resolving all reasonable inferences in favor of the verdict. *United States v. Naranjo*, 634 F.3d 1198, 1206 (11th Cir.2011).   Conclusions of law are reviewed de novo, *Harris v. United States*, 149 F.3d 1304, 1306 (11th Cir.1998).   Sentencing errors findings of fact that to support an enhancement is for clear error. *United States v. Ndiaye*, 434 F.3d 1270, 1280 (11th Cir.2006).   The adequacy or jurisdiction of a 21 U.S.C. 851 notice is de novo review. *United States*

*v. Ramirez*, 501 F.3d 1237, 1239 (11th Cir.2007).  Sentencing Issues raised for the first time on appeal are reviewed for <u>plain error</u>.    *United States v. Bridgewater*, 407 Fed. Appx. 398, 401 (11th Cir. 2011) (Unpublished)  <u>Cumulative error:</u> When individual judicial errors or prosecutorial misconduct may not be sufficient to warrant reversal alone, the cumulative effect of errors may be considered to determine if the defendant has been denied a fair trial. *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir.2009), *cert. denied,* —— U.S. ——, 131 S.Ct. 413, 178 L.Ed.2d 322 (2010).

<u>**SUMMARY OF THE ARGUMENT**</u>

Jophaney Hyppolite, 29, was convicted by a jury on a single charged conspiracy of 280g or more of cocaine base.  January 22, 2013, he was sentenced to mandatory life, 21 U.S.C. 851 (2012).    This record does not show proof of actual service of the §851 Notice. A lack of actual service would violate Hyppolite's due process rights. Service on counsel only is insufficient protection of substantial rights.    In light of *Alleyne v. United States*, *113 S. Ct. 2151 (June 17, 2013)* (Which counsel realizes is limited to guideline mandatory minimums) Hyppolite invites this court to re-visit §851 policy arguments, consider pending legislation, and §851 procedure and find Sixth, Eighth, and Fifth Amendment violations. Although drug type and drug quantity was before his jury, to his prejudice the jury was not properly instructed and a special verdict on quantity

7

should have been submitted. Hyppolite was prejudiced due to *linking* of the §851 mandatory life to the drug quantity verdict for the single conspiracy.  The Government and the district court acknowledged that the facts could support a not guilty verdict for unrelated multiple conspiracies.  The failure to allow the jury to find an individualized assessment of quantity affected Hyppolite's substantial rights and deprived him of a meaningful opportunity for guideline reductions, objections, and §3553(a) consideration.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    THE EVIDENCE WAS INSUFFICIENT TO SUPPORT CONVICTION ON COUNT I – SINGLE CONSPIRACY

Denial of Rule 29 Motions – Count 1 - Hyppolite's jail calls may confirm drug distribution, friendships or associations, and a common goal to avoid law enforcement, but not proof beyond a reasonable doubt of a common plan and purpose to operate as a single conspiracy.  In many respects, the jail calls show independent operations:  On the intercept of phone no. 222-###-1032, R. Jean allegedly called W. Jean and specifically stated "do not get into associated with Rashid or Judge . . . that's how this s__ started over drugs. Let that … finish over there…You feel me? ...That s__ aint got nothing to do with what's over here." Docs 492-493 Dupin testified that the "trap" houses operated independently. Doc

498:79    He only saw Sereme and Rashid cook crack and give it to others.    Doc

498:79    Pots, pans, and related crack manufacturing utensils at Kimble confirmed

its independence. Doc 493:36; PSR ¶54; Gov. Exhibit 49   **Sander** testified that R.

Jean operated Kimble "on his own." Doc: 491:173 Sander's testimony clearly

contradicted Dupin.   Doc 491:196 **Sander** testified that R. Jean was not in Lee

County, FL. in 2009.  Doc 491:270 And, she never included Hyppolite in 2009 or

2010 drug distributions.  She testified that she sold for Poppie, Jason, and Fat Boy,

who were from Oklahoma and that she only received about 10 ounces from R.

Jean.    Doc 491:64, 262, 270 <u>Actual **drug evidence**</u>    In conflict with a global

conspiracy, the Kimble house only contained miniscule cocaine, money, and

paraphernalia. Gov. Exhibit 49 Yet, **Sander and Blakely** testified to extensive

sales, manufacturing, and distribution that was completely unsupported by the

combined search warrants on the distribution houses. Exhibit 49 Due **process**

**violation – drug quantity:** Because of a lack of evidence that Hyppolite had

knowledge or was a participant in the Oklahoma conspiracy no Oklahoma drug

quantity should be attributed to Hyppolite.  He was prejudiced by inclusion of

Oklahoma and the following biased and cumulative testimony of the flawed

informants:  **Torta** – "plates full of crack";  "saw ounces and ounces of crack over

the <u>years</u>";  September 21, purchased  17.4g for $1,400," which contradicted a

prior statement of a $2,000 purchase;  uncorroborated testimony on the same date

she purchased a large quantity from Fritzco Desir;  **Barker**  said she saw " plates full of crack";  **Blakely** testified to  "100 buys over 2 years"; **Michael Dupin** – "sold 11-12 cookies."   **Blakely** testified to a hundred or more drug purchases buys from Kimble but she could not identify Hyppolite. Doc: 495:17-18 Michael Dupin – sold to Torta who did not identify other cooperating witness as person who sold her cocaine base.  Dupin testified that he sold to Torta and knew she was also an informant.  Doc 496:252 As to drug quantity where is the proof that on September 21st 2011 Torta purchased $2,000 worth of crack cocaine in one day from Dupin? Doc 496:252    Sander, Blakely, Torta, … all testified that they frequented the Shed to conduct drug transactions. Doc 495:11-14; 496:87; 495:251-308 The Informants differed significantly on the size or weight (which determines its value) of a cocaine base "cookie".   The testimony ranged from 7g - 14g cookies.  Doc 495:79(Barker); Doc 495:144(Torta)

**Count 11** Torta, an alleged participant in the September 27, 2011, transaction at Kimble/Shed failed to identify Hyppolite as the person who sold her drugs. Doc 495:149; Doc 497:66 She also testified to multiple purchases at Kimble did not identify him in court as Hyppolite, Mike Larry, or Bo.  Doc 495:178-180 **Sander**, a key witness for the Government, admitted crack addict, and paid informant, was improperly assisted to make her in-court identification. Doc 491: 189-191; Gov. Exhibit 2    Before a visual in-court identification, Mr. Casas

showed Sander Government Exhibit 2 and asked for an identification. Doc 491:191

She identified a picture of "Mike Larry."   Doc 491:191 Hyppolite, the only

unidentified defendant at the defense table, was then identified as "Mike Larry."

Doc 491:201-202  If the Government unsuccessfully argued the Count 6 Rule 29

that Blakely's *name only* identification of Hyppolite was sufficient (Doc 497:79),

then Sander's "Mike Larry" identification was equally unreliable and an abuse of

discretion for the district court to deny the Rule 29 dismissal Count 1 and 11.  Doc

491:202

### **Insufficient evidence of pooled resources or interdependent**: *See United*

*States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998) (Found conspiracy to some

but not all defendants: The government must show an "interdependence" among

the alleged co-conspirators in order to prove that the indicted conspiracy was a

single unified conspiracy as opposed to a series of smaller, uncoordinated

conspiracies).   In this case, the only testimony of "pooled resources" was the

uncorroborated testimony of Sander.   Doc 491:197 Sander actually separated

Kimble from two other distribution houses.  D491:176 Evidence from the search

warrants did not connect Kimble to other distribution houses. Doc 493: 36; 215,

220, 233    Sander testified that Hyppolite traveled to Miami to visit and

presumably obtained cocaine. Doc 491:198   She could not testify that Hyppolite in

fact, purchased cocaine in Miami, and she could not name a Miami supplier. Doc

491:198 Arguably, a separate Miami supplier would support multiple or separate conspiracies. **<u>Competition between distributors:</u>  Dupin**, a distributor, testified that the defendants "competed for drug sales" in the Fort Myers neighborhood and therefore had difficulty making drug sales. Doc 497:9-10 **Torta** also testified to competition between the houses on Linda Loma, Kimble, and Carmen. Doc 497:10 On cross **Dupin** testified that he distributed from the Carmen house and had nothing to do with the Linda Loma house.   Doc 497:14    Dupin did not know Bonita.  Doc 497:14   There was no evidence that Dupin worked for Hyppolite or R. Jean.  Doc 497:10-14 The failure to welcome a competitor, Gadget, is not proof that Kimble did not compete with other distribution houses. Doc 498:33 As counsel Rosenthal argued, "competitors who share some items can still be 'competitors' and not a single conspiracy."  Doc 498:85 Hester's testimony also supported independent multiple conspiracies.  Doc 491    **Blakely** testified she believed Black and K.K. were in charge in Linda Loma.   Doc 495:14-16 Apparently competing against himself, she testified that K.K.  had two (2) houses in Linda Loma.  Doc 495:14 Sander testified that from 2009 thru October 18, 2011, she sold more than ten ounces of cocaine to Linda Loma suspects only:  **Poppie, Fat Boy, Jason, K.K., Slim, and Black**.  Doc 491: 263-264 For the forgoing reasons (and for reasons further argued herein), this court should reverse the convictions, Count I and II for insufficient evidence to support the jury's verdict of

a membership in the charged conspiracy and responsibility for drug quantity of 280g or more of cocaine or cocaine base.

## II.    HYPPOLITE WAS DENIED DUE PROCESS BECAUSE THE GOVERNMENT FAILED TO ADEQUATELY SUPERVISE AND CORROBORATE, BIASED, DRUG ADDICTED, AND "PAID PER DRUG TRANSACTION INFORMANTS"

The informants were excessively paid by the Government although it was known that some had pending criminal charges; actively engaged in crimes, and used drugs while cooperating:  **Barker** – admitted actively engaged in prostitution and was arrested for a drug sale to an undercover officer.  Doc 495:108   She admitted daily use of crack and oxycodone during controlled buys at the Suncoast Estates trap houses. Doc 495: 66-67, 83   **Hester** – admitted crack addict, found in possession of cocaine during an alleged monitored transaction.   **Torta** – released on bond but paid per transaction a total $9,400 and her criminal charges were dismissed.  She testified to large uncorroborated drug quantity. Doc 495:124   She boldly testified that she "did not need to use her salary from the agents to buy drugs because 'I had my own drugs.'" Doc 496:62 She also admitted to personal drug transactions when she was cooperating. Doc 496:62   She confirmed that she took highly addictive medications and prescription drugs for cancer treatment: Oxycodone, Roxicodone, Xanex.  She denied that her (terminal) medical condition

13

and the drugs affected her memory and testimony.  Doc 496: 57-58 Det. Armato admitted he "motivated" **Blakely** to cooperate by falsely threatening to charge her with a crime he knew she did not commit.  He then used Blakely as an informant who was paid over $10,000.00 tax exempt "per transaction."  Blakely also claimed that she stopped using crack when she began cooperating. Doc 495:52, 55- 61. **Sander** – told her mother that she "needed to testify against everybody or they are going to give me 23 years and I will score 92-115 months." Doc 497:218-225, 268-272    The Government paid **Hester** $7,000.00 as an informant and he gave grand jury testimony, despite an admission that he used payments to support his drug addiction.    **Informant Conflict of Interest** Apparently cooperating as a team (Doc 495:138-139), **Sander** admitted that she wanted to rent a trailer and get in the crack business.  Sander also stated that **Torta's** cooperation helped pay her child support. Doc 496:51, 62 Torta testified that Hyppolite physically assaulted or threatened her for competing with him because she was selling drugs out of her home. Doc 495:193; PSR 45, 634   Despite these inherent conflicts, informant drug purchases were not adequately controlled or monitored. Doc 495:58 ; Doc 494; Doc 494:251, 255 (recording device but inoperable audio); Gov Exhibit 12, 14A The Government never drug tested or polygraphed any informant. Doc 498:9; Doc 495:200

---

4 i.e. USSG §2D1.1(b)(2) (2 Level enhancement against Hyppolite was denied)

Hyppolite objected to agent voice identification opinion testimony. Doc 492:101; Doc 492:294; Fed. R. Evid. 901 and 701    Agent Davis (Davis) and Agent Armato (Armato) testified that they relied on "context" to make identifications. Doc 494:308-311    Neither agent talked with Hyppolite or other defendants and did not participate in any recorded phone conversations. Docs 492-495 They did not use an expert or technology. Their relied on group consult, informant opinion, context with cars, photographs, jail calls, and wire intercepts. Doc 493:42 Davis testified that when they did not agree, he had final veto on voice identifications. Doc 494:192.  Hyppolite and codefendants challenged introduction of the agent produced transcripts of the audio recordings that relied on agent opinion to make defendant voice identifications. Doc 493:304-306; Doc 492; Exhibit 7 The transcripts were admitted with the limiting instruction that they are "not certified and were created by law enforcement and interpreters." Doc 492:9-14; 115-116 Linguist reviewed second hand provided by the agents. Doc 493:78, LL19-24; Exhibit 21 *See United States v. Curbelo*, *infra, 22-23* (The declarant for confrontational clause purposes is the interpreter, not the officer).

Agent Basquin (Basquin) testified that some words have dual meanings and they relied on Haitian interpreters to translate or transcribe. Doc 493:44-46 After the transcripts were published to the jury and witness testimony was obviously inconsistent with the agent's transcript identification labels. Doc 492:101 The

agents were forced to reveal the incorrect voice identifications. Doc 494:308-311; Doc 494: 314-318 (Informant Nancy Silva contradicted the agents voice ID). The court allowed the Government to redact the defendant speaker initials from the transcripts that they then believed differed from the audio recordings; label the speakers as unidentified ("UI'); and redact the agent's "lead in" as hearsay. Doc 494:314-318; Doc 494:316   A summary of transcript errors that were directly related to Hyppolite before or after the discovery and purported cure:  Call 1391– Hyppolite was mistakenly put on transcript discussing a traffic stop with W. Jean rather than Ductant and W. Jean; Call 1489 – Hyppolite and Ductant's names were incorrectly switched in the conversation; Call 1666 – labeled Hyppolite in an incriminating speaking conversation that in fact involved R. Jean and Ductant; Call 1972 – W. Jean and Ductant's speaking order was incorrectly switched; Call 1977 – Hyppolite was labeled as the speaker in a transcript that was presented to the jury when in fact the speaker was W. Jean.  Doc 494:178-180,199; Gov. Exhibits 21A, 21B, 32

The defense theory was multiple independent conspiracies less than 280g and not the single charged conspiracy of 280g or more.  Thus, confusing the speakers and thereby associations very likely contributed to Hyppolite's convictions. Doc 494:178,190-191   *Contrary*,   *United States v. Savage*, 701 F. 2d 867 ( 11th Cir. 1983) ;  *United States v. Williams*, 59 F.3d 1180 ( 11th Cir. 1995)

On these facts, admission of the transcripts was an abuse of discretion and not harmless error. Doc 494:316-318

### III.   THE DISTRICT COURT'S FAILURE TO INSTRUCT ON MULTIPLE CONSPIRACIES AND FAILURE TO SUBMIT A SPECIAL VERDICT FOR INDIVIDUAL DRUG QUANTITY WAS REVERSIBLE ERROR

Especially in light of the 851 mandatory minimum life enhancement, due process and a fair trial for Hyppolite required a separate verdict to possibly support 28g but less than 280g. Doc 497: 125, 129 In *United States v. Alleyne*, 133 S.Ct. 2151 (2013), the Supreme Court recently held that all facts that support a minimum mandatory must be found by a jury.  The instant conspiracy instruction did not misstate the law but was insufficient and prejudicial to Hyppolite's theory of defense.  *See also United States v. Kelsor*, 665 F.3d 684, 695-696 (6th Cir. 2011). In this case, the district court conceded that multiple conspiracies findings by the jury could support a not guilty verdict. Doc 497:125     The court stated, "If the jury finds multiple conspiracies, it should be a not guilty… [I]f there's a multiple conspiracy, and that the conspiracy charged in the indictment is not one of those conspiracies, it should be not guilty for everybody." Doc 497:125, LL12-25    The court stated that he "expected them [defense] to make this closing argument which he believed to be consistent with the law." Doc 497:125-126    Hyppolite's theory was that the Kimble distribution house operated independent of the other houses

17

and was not part of the single charged conspiracy, despite friendships, associations, and occasional shared workers. Doc 494:293    Accordingly, this court should remand and grant a new trial for failure to give a multiple conspiracy instruction. Doc 497:125-126    **<u>Special verdict form</u>** An alternate basis to convict is also a fair opportunity for an acquittal.  Doc 383:7   Attorney Kaufman asked the district court to include a special verdict for each. Doc 497:129  *See United States v. Reed*, 980 F.2d 1568, 1581-1582 (11th Cir. 1993) (Transfer of evidence from one conspiracy to a defendant in another conspiracy).  In *United States v. Kelsor*, at 696, the district court did not include multiple verdicts because the evidence did not implicate the defendant in more than one conspiracy.  Like in *Kelsor*, the Government argued that Hyppolite and the codefendants were collectively responsible for all drug quantity in a single conspiracy.  *Kelsor*, at 696.   The Government and the court conceded that Hyppolite and the codefendants may not have known of drug activity or drug quantity of individuals in a separate conspiracy.   Doc 497:64-78; 82, 119, 125-129 Correctly, and to avoid unfair attributing of drug quantity the *Kelsor* judge gave a  special instruction5 that

---

5 In making the quantity determination, you may only consider quantities of heroin that you find beyond a reasonable doubt were knowingly and intentionally possessed with the intent to distribute and /or were distributed by the defendant and /or by other persons acting with the knowledge and consent of the defendant, during the existence of and in furtherance of the common illegal goals of the conspiracy alleged in Count 1 of the Indictment.  In making the quantity determination, you must not consider evidence of the

prevented a showing of prejudice for failure to give a multiple conspiracy instruction. *Id.* To the contrary, a panel of this court recently affirmed approximated drug quantities in *United States v. Almedina*, 686 F. 3d 1312 (11th Cir. 2012). Unlike this case, *Almedina* involved the actual intercept of two drug deliveries; actual cash money, and Almedina's admission to the deliveries. Almedina argued that the court improperly speculated the drug type and quantity attributed to him. *Id*. at 1315   The court relied on the evidence seized to make a "fair, accurate, and conservative estimate of the quantity of drugs attributable. It agreed, however, that quantities cannot be based on drug quantities that are merely speculative. *Id*.   This court further held that only "reasoned speculation and reasonable estimation" is permitted. *Id.*   Unlike this case, neither *Almedin*a or *United States v. Hollins*, 498 F.3d 622 (7th Cir. 2007) (the district court estimated quantity for one drug trip using a closely analogous trip that used the same methodology), which this court found persuasive, involved an absence of a seizure to support a reliable and reasonable estimation.  The unreliable controlled buys only involved street level amounts of $20-$100 of cocaine base. Doc 491:69, 243 Yet, the biased and flawed informants readily admitted to a significant amount of drug use and personal transaction while they were "on the job getting paid by the

---

amount of heroin allegedly seized from the residence of Edmund Plunk at 1623 Waterstone Court.

*Kelsor*, at 696.   In *Kelsor*, over 1,000g of heroin was seized from Plunk's residence.  *Id*.

Government."  Doc 496:62   In conclusion, contrary to the Government's single conspiracy theory, other than the traffic stop powder cocaine discovery and minor combined cocaine seized from the distribution search warrants, there was insufficient evidence to support the drug, and quantity verdicts.  *Almedina*, at 1315-1316.

## SENTENCING

Jophaney Hyppolite, 29, was born September 4, 1983, in Miami, Florida; he was never married and is without children.  PSR ¶ 101, 104   His parents divorced when he was three years old and he never had a relationship with his father. PSR ¶ 101   He was raised by his mother and grandmother.  PSR ¶'s 10-103 He reported child abuse, behavioral problems, and difficulty focusing; reading; and comprehending in school. PSR ¶ 's107; 113   His most serious State convictions are delivery of cocaine and possession of cocaine with intent to manufacture or deliver.6  PSR ¶ 87 2007   He pled guilty to possession of six bags of marijuana and 13 baggies of crack cocaine that was reported located in a nearby bush.  He was sentenced to a year in Florida State Prison.  PSR ¶ 87 He served a second prison term, 18 months, on a simple possession of cocaine charge for testing positive for marijuana. PSR ¶ 88   He also tested positive for marijuana with Pre-

---

6 Other criminal history includes misdemeanor marijuana charges (PSR ¶'s 82-83, 85), petit theft, car burglary, and multiple driving offenses (PSR ¶'s 86, 89-81). He has no history of violence, weapons, firearms, sex offenses, threats, or assaults. PSR ¶ 87

trial Services (PSR ¶ 113) and reported daily use of marijuana since 2010 that "ruined my life." PSR ¶'s 110-112.7    The PSR suggests a lack of stable housing, employment, or a driving license.  PSR ¶¶'s 78-91 He reported a history of abusing alcohol and marijuana at age 16. PSR ¶ 88   He attended 12th grade but did not qualify for a diploma and did not obtain a GED.  PSR ¶ 113

## IV.    IMPOSITION OF THE DRUG PREMISES ENHANCEMENT WAS ERROR

Hyppolite objected to probations two level enhancement for managing a distribution house:   Kimble/Shed. PSR ¶ 64: Addendum ¶3; U.S.S.G §3D1.1 (b) (12).   The Government, proffered *agent* testimony that they believed Hyppolite may have had a key and paid the rent on at least once occasion. Doc 501:25   But, Sander testified that  R. Jean  "put his money  with  Poppie, Jason, Fat Boy, and Jason" at the Linda Loma house, but "got his own trap in the "Shed" after he fell out with them about "rent splits"  Doc 491:176 LL16-25; 197,259   She testified that R. Jean "no longer shared money but might share workers."  Doc 491:197-198 Sander testified that Hyppolite was a "worker" at Kimble.  Doc 491:191   Hester described himself as "worker" or "foot soldier" (Doc 491:143) whose duty was to bring in customers, watch over the house as a doorman or houseman, and put his name on the lease. Doc 491:144 Hester testified that "Jen" (believed to be Sander)

---

7 The district court sentenced him to an inpatient or outpatient substance abuse program after his release from Federal Prison.  Doc 501:32

was also a worker. Doc 491:143-144   Because the district court failed to consider this it was clear error to impose the distribution house enhancement.

## V.    IMPOSITION OF THE MANAGER ROLE ENHANCEMENT WAS ERROR

Hyppolite objected to the three-level manager enhancement. U.S.S.G §3B1.1 (b) Sander also named and described defendants or participants in the alleged conspiracy and their various roles and duties. Doc 491:189-191      She unequivocally considered "Mike Larry" (Hyppolite) a "worker" at the Kimble/Shed.  Doc 491:191, LL16-18 She believed Hyppolite and codefendants traveled to Miami (their home) to visit family or to get powder cocaine.  Sander did not name a single Miami supplier. Doc 491:198, LL2-11 Based on this testimony, R. Jean, who drove a Jaguar, formerly co-managed Linda Loma, and rented the Kimble/Shed deserved the manager role not Hyppolite. Doc 491:198-199;  Doc  501:25-29  Also  the  Government's  theory  is  that  Sereme (organizer/leader) was above R. Jean (manager), who apparently was above Hyppolite.  Doc 529: 3-4 The district court committed clear error when it failed to consider R. Jean's role8 and Sander's testimony.

---

8  R. Jean was sentenced to 240 months concurrent, Counts 1, 5, and 8.  Doc 522

## VI.    THE 21 U.S.C. SECTION 851 NOTICE WAS DEFECTIVE, MISLEADING, AND UNCONSITUTIONAL

This record is silent on actual service of the 851 Notice before trial. Fed. R. Crim. P. 32(i) (3)  The purpose of a §851 Notice is to inform the defendant that the government is seeking a sentencing enhancement, so that the defendant can challenge the convictions if inaccurate and adjust his trial or pleading strategy with full knowledge of the consequences. §841(b) (1); *United States v. Ramirez*, 501 F, 3d 1237, 1239 (11th Cir. 2007)    The plain language of Section §851 (a) (1) 9 requires both a mandatory strict timely filing requirement and a mandatory strict service requirement.    The Government bears the burden of proving strict compliance with the procedural requirements of §851 (a) (1).  It is widely held that a defendant's *actual notice* of the §851 information does not waive the Government's statutory obligation to serve a copy of the information on the defendant or his counsel before trial.    *United States v. Ladson*, 643 F.3d 1335, 1344 (11th Cir. 2011); *citing United States v. Noland*, 495 F.2d 529, 533 (5th Cir. 1974).  Because the *Ladson* panel could not determine that Ladson or his attorney received actual service of the Notice it reversed and remanded without the 851

---

9 §851(a) (1) states in part:  No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, ... the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

enhancement under the second information.  *Ladson*, at 1346.  The court stated, "reading or summarizing a §851 information in open court is not "serv [ice of] a copy" sufficient for strict compliance with §851(a) (1).  *Id*. at 1345; *citing United States v. Novaton*, 271 F.3d 968, 1016 (11th Cir. 2001) (Service of a §851 sentence enhancement must comply with Fed. Rule Crim. P. 5(b)).  Due to insufficient notice Hyppolite agrees that he did not file a written objection to either Notice including objection to the dates, locations, and validity of the State convictions. Hyppolite was not included in either certificate of service. Doc's 201, 252, 324 He also failed to object to the PSR Addendum. The PSR was equally silent on actual service and did not include any §851 statutory language, rights, and responsibilities contained in the ECF Notices. PSR ¶ 14 and ¶ 71.   Like *Ladson*, this court should vacate and remand for an evidentiary hearing on actual service of the 851 Notice that the Government relies on for the enhancement or re-sentence Hyppolite without the enhancement.  *Id*. at 1346.

**The 851 Notice was misleading and prejudicial**:  The Notice contained three sets of convictions which were less than five (5) years old and subject to challenge under  21 U.S.C. § 851(e).   After argument to correct dates and locations, pursuant to  §851 (b)(1)(C),  the court found that felony drug convictions a) and b)  were in fact one (1) related conviction; convictions (c) and (e) was one (1) related conviction; and  conviction (d)  was also a qualified §851 conviction.

Doc 501:17 See U.S.S.G.L. §4A1.2 (a)  The court overruled Mills and found that Hyppolite had a total of three (3) qualified §851 predicate convictions.  Doc 501:17    Mills mistakenly believed that three (3) and not two (2) felony drug convictions triggered a mandatory minimum life sentence. Doc 501:13-14

The Government conceded failure to correct or identify the alleged felony drug convictions.  Doc 501:16    Over Hyppolite's objection, the court ruled those errors were only clerical and that Notice was sufficient to support enhancement. Doc 501:17   Finally, as required, the district court asked if Hyppolite contested the validity of the predicate convictions and he did. Doc 501:18 Because of the lack of proof that Hyppolite was actually served; and the multiple errors was deprived of an opportunity to object and prepare for a fair sentencing hearing.  Harmless error does not apply to failure to comply with §851(a) requirements. *United States v. Weaver* 267 F 3d 231, 247 (3rd Cir. 2001); *quoting United States v. Olson*, 716 F.2d 850, 852 (11th Cir. 1983).

## A. <u>Procedural Due Process Violation</u>

Section §851 is procedurally defective and unconstitutional as applied:  1) The Notice failed to unequivocally advise Hyppolite that *upon conviction* the court must impose a life sentence and that the court is without discretion or authority <u>not</u> to impose a life sentence;  2) The Notice fails to inform Hyppolite that he had a right to file an objection to the listed state or federal felony drug offense; 3) The

Notice is ambiguous and states: The United States "will be seeking the enhanced penalty…"(P.1)  The defendant is 'eligible' for an enhanced penalty of a minimum mandatory term of life imprisonment, without parole, .."(P. 3) United *States v. Weaver*, 267 F 3d at 247; *United States v. Rutherford*, 175 F.3d 899,904 (11th Cir. 1999).

If Hyppolite did not receive actual service of the Notice, or alternatively, his attorney did not serve the Notice on him and adequately explain the *mandatory life penalty, including the lack of discretion by the court* not to impose a life sentence, he was denied due process and adequate representation of counsel, to his detriment.   Before final sentence was imposed §851(e) required the district court to ask Hyppolite if he admitted the predicate felony convictions.  This "last rites" perfunctory inquiry is insufficient due process to support a mandatory life sentence. Doc 501:18    *United States v. James*, No. 10-10399, P. 18 (11th Cir. 2011)    At this juncture, Hyppolite's statutory rights and challenges have already been forfeited. *Id.* at 18 ; §851 (b)(e); PSR ¶121   Counsel respectfully submits that §851 defendants are constitutionally protected *only* if the district court is required to confirm actual notice on the defendant in open court and there advise them of their rights and penalties.  The district courts should be further obligated to timely and fully advise §851 defendants of the *mandatory and non-discretionary penalty* including the right to file written objections prior to trial.  The current statutory

procedure did not first insure that Hyppolite received actual notice in order to have a "meaningful opportunity to be heard" or make an intelligent decision about possible plea negotiations. *Perez v. United States*, 249 F. 3d at1266. Perez and his attorney did not dispute receipt of the original and amended § 851 Information and Perez filed a written response before he pled guilty. *Id* at 1263.

## B. Violation Sixth Amendment
### United States v. Alleyne, 113 S. Ct. 2151

Although the §851 mandatory minimum is statutory, in *Alleyne v. United States*, *supra*, at 2, 36, the Supreme Court acknowledged that there is no longer a reason to draw a constitutional distinction between mandatory minimums and statutory maximums. *Alleyne* limited *Harris v. United States,* 536 U. S. 545(2002), *and* the court clearly intended to expand due process rights associated with trials and sentencing procedure. *Alleyne*, at 5, 10. Justice Thomas stated that Sixth Amendment jurisprudence applied in *Apprendi10* make it "impossible to disassociate the floor of a sentencing range from the penalty affixed to the crime." He stated that it is more important that such facts be done so by a jury." *Id*. at 19 As previously argued, and consistent with *Alleyne* the combined failure to give a multiple conspiracy instruction and submit a special verdict for a lesser drug

---

10 *Apprendi v. New Jersey*, 530 U.S. 466, 490,120 S. Ct. 2348 (2000) (facts that increase the prescribed range of penalties are elements of the crime thus the Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt).

27

quantity or individualized assessment of drug type and quantity was not harmless error and affected Hyppolite's substantial rights. Otherwise, the jury could <u>only</u> apply the significant uncorroborated global drug quantity and automatically link11 Hyppolite to the mandatory life enhancement.12   Doc 378; Doc 501:176

July 12, 2013, in *Descamps v. United States13*, the Supreme Court visited how district courts should evaluate State felony convictions for Federal sentence enhancements. Following *Alleyne* and *Peugh14*, *Descamps* also stressed the importance of procedural protections in the sentencing phase. *Descamps,* at 2283. Clearly, the scope of Federal courts to enhance penalties and increase fairness was narrowed by each Supreme Court opinion.15  *Almendarez-Torres v. United States*,

---

11 *Smarter Sentencing Act, S. 1040, 113th Cong. (2013), infra,* would direct the Commission to lower the guidelines consistent with the reduction in the mandatory minimums and reduce the mandatory minimum for 280 grams to 5 years.  See Hill
12 Attorney General Holder's new national policy basically instructs federal prosecutors to consider whether sentences below the advisory ranges are appropriate until those ranges are **delinked from the mandatory minimum penalties**. 2013 Holder Policy, Memo ("In cases where the properly calculated guideline range meets or exceeds the mandatory minimum, prosecutors should consider whether a below-guidelines sentence is sufficient to satisfy the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)."); citing, 851 F. Supp. 2d 478 (E.D.N.Y. 2012); *See United States v.Ysidro Diaz*, No. 11-cr-00821-2JG, P.19 (E. D.N.Y. 2013) (Judge Gleeson dismantles the drug guidelines and calls for the sentencing commission to dismantle and lower the drug guidelines and **de-link** them from mandatory minimums that "myopically focus on drug weight and impose mandatory minimums intended for high-level drug traffickers"
13 *Descamps v. U.S*., 133 S. Ct. 2276, 2283 (2013).
14 *Peugh v.  United States*, 133 S.Ct. 2072 (June 10, 2013).
15 Before the **Fair Sentencing Act of 2010**, Pub. L. No. 111-220, § 2(a), was enacted, an offense involving only five grams of crack triggered the five-year

523 U.S. 224, 228-47, 118 S. Ct. 1219, 1223-33 (1998); *United States v. James*, No. 10-10399, at 21.

The Supreme Court recognizes the increase in public opinion against excessive mandatory minimum sentences. *See United States v. Curbelo*, NO. 10-14665, P. 14 (11th Cir.  August 9, 2013) (A sentencing court may no longer impose a minimum mandatory sentence based on its own findings as to drug quantity). Despite legal precedent that an 851 mandatory life sentence is not unconstitutional or cruel and unusual punishment, the public[16] and the Department of Justice[17]

---

mandatory minimum and an offense involving 50 grams of crack triggered the ten-year mandatory minimum).    Introduced on July 31, 2013, by Senators Dick Durbin, Mike Lee, and Patrick Leahy,  **The Smarter Sentencing Act, S. 1040, 113th Cong. (2013),** would, inter alia, (1) *enlarge so-called "safety valve" relief* from the drug offense mandatory minimums, 18 U.S.C. § 3553(f), to include defendants with up to three criminal history points; (2) make the changes to crack sentences in the Fair Sentencing Act of 2010 retroactive; (3) reduce the ten-year mandatory minimum discussed below and in *United States v. Dossie*, 851 F. Supp. 2d 478 (E.D.N.Y. 2012), to five years; (4) reduce the corresponding five-year mandatory minimum to two years; and (5) direct the Sentencing Commission to make appropriate matching reductions in the Guidelines.

[16] On March 20, 2013, Senators Rand Paul and Patrick Leahy introduced the **Justice Safety Valve Act of 2013**, S. 691, 113th Cong. (2013), which would extend "safety valve" relief to all federal crimes subject to mandatory minimum penalties.

[17] The Department of Justice recently announced new policy limitations on mandatory minimum sentences and recidivist enhancements in certain drug cases, Memorandum from Eric H. Holder (2013 Holder Policy), *Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases* (Aug. 12, 2013)

tend to disagree.  8th Amend., U.S. Const.

## C. <u>Violation Eighth Amendment Excessive Punishment</u>

Hyppolite, 29, is not career offender eligible but was enhanced to mandatory life for his first drug trafficking offense.  The new Holder policy is to avoid mandatory minimums that remain *linked* to unadjusted drug quantities and when the guideline range is sufficient for §3553 (a) (1)-(7) punishment.  Hyppolite is situated similar to the drug defendants the Holder policy seeks to protect: non-violent, addicted, low level worker or manager, not a "boss," supplier, organizer or leader.    **<u>Sentencing disparity</u>** - Based on the previous argument and authorities against the manager and premises enhancement, without the §851 mandatory life enhancement Hyppolite would face a less than mandatory life but a significant advisory guideline sentence with the Government and Hyppolite having the application of    §3553(a) mitigation to prevent an unwarranted sentencing disparity18  and adequate punishment.  PSR  ¶; Doc 501    Despite his recidivist drug offenses even the Department of Justice  (DOJ) agrees that mandatory life  for

---

18 *See United States v. Young*, No. CR 12-4107-MWB, 2013 WL 4399232, at *8-12 (N.D. Iowa Aug. 16, 2013) (discussing the lack of uniformity in the application of § 851 enhancements:  District disparity and African American / Drug defendant disparity); The legislative history of the *Fair Sentencing Act, 2010* reflects motivation to remove unfair  arbitrary sentencing of African Americans, 156 Cong. Rec. S1680-02m (March 17, 2010)(Sen. Durbin);  *United States v. Young*, No. CR 12-4107-MWB (N.D. Iowa 2013) ( Judge Bennett,  Opinion and Policy, 18 U.S.C. §3553(c); 21 U.S.C. 851 Disparity).

defendants with similar low level roles is disproportionate and unnecessarily excessive to the defendant, his community, and his family. For the foregoing reasons Hyppolite respectfully submits that the mandatory life sentence should be reversed as cruel and unusual punishment19.

### D. Violation Fifth Amendment: Double Jeopardy - Equal Protection

The charged conspiracy allegedly began **"on or before 2008 in the Middle District and elsewhere"** (Oklahoma, Miami, FL. Myers, FL.).  During the trial, over defense objection, the court admitted testimony of Sereme's drug activity in Oklahoma. Doc 491:63-73 The Government argued that one or more of Sereme's (would apply to Hyppolite) §851 predicate felonies is "conduct within the charged conspiracy" and therefore not scored "prior convictions."  Doc 529:5-9; 537 i.e. *See Kelsor*, at 700.   Under the Government's theory, it follows that Hyppolite's 2009 predicate convictions (c) and (e), committed in Miami, Dade County, the first Florida location for the charged Oklahoma conspiracy are not scored and arguably not  §851 predicates. Doc 324; *United States v. Hansley*, 54 F.3d 601, 606,717 (11th Cir. 1995). 20   Probation reported that Ductant was present during two of

---

19 The district judge stated, "Based on the statutory minimum, the court has no choice and is required to impose the mandatory sentence of life imprisonment." Doc 501:32

20 If the 2009 felony drug convictions are "related" and do not qualify as §851 predicates then (a) or (b), and (d) remain as potential triggers of the enhancement. Doc 501:17-18; Doc 324   However, Probation should not attribute criminal history points for (c) and (e).  Doc 324;   PSR¶ 87

Hyppolite's State arrests. PSR ¶'s 83-86 *Introduction* of the Oklahoma transactions was not harmless and unfairly and significantly increase the estimated drug quantity which contributed to his conviction and 851 enhancement all in violation of Hyppolite's substantial rights.

## <u>CONCLUSION</u>

For the foregoing reasons, the prejudicial effect of the cumulative errors affected Hyppolite's substantial rights and a warrants a reversal of his convictions. *United States v. Foley*, 508 F.3d 627, 638 (11th Cir.2007).

Respectfully Submitted,
Law Offices of Angela B. Wright, P.A.

*s/Angela B. Wright*
Angela B. Wright
Florida Bar No. 0803065
607 W. Horatio St.
Tampa, FL 33606
Telephone: 813-277-0068
Facsimile: 813-277-0587
wright@abwrightlaw.com

## CERTIFICATE OF COMPLIANCE

I also hereby certify that this brief complies with 11th Cir. R. 32 because it 7,662 words, excluding the parts of the brief exempted.   This brief has been prepared in Times New Roman, is double-spaced, and 14 font.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellant together with the Record Excerpts were furnished by hand delivery to Susan Rothstein-Youakim, Appellate, Assistant United States Attorney, United States Attorney's Office, 400 North Tampa Street, Suite 3200, Tampa, FL 33602 and by U.S. Mail to Jophaney Hyppolite, RN: 55556-018, USP Coleman I, U.S. Penitentiary, P.O. Box 1033, Coleman, FL 33521 this 25th day of November 2013.

## CERTIFICATE OF ELECTRONIC FILING

I also hereby certify that, in compliance with 11th Cir. R.  31-5(a), an Adobe Acrobat® PDF file of the foregoing brief was uploaded via the Internet to this Court's website on November 25th 2013.

s/Angela B. Wright
Angela B. Wright
Counsel for Appellant Jophaney Hyppolite